UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MATTEL, INC.,

Plaintiff,

vs.

THE ENTITIES DOING BUSINESS
AS GOODMENOW AT THE URL
GOODMENOW.COM, ET AL.,

Defendants.

Civil Action No.: 1:20-cv-11075-NRB

**MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR ATTACHMENT**

Katherine Burghardt Kramer, Esq.
Jacob Chen, Esq.
RongPing Wu, Esq.
DGW Kramer LLP
One Rockefeller Plaza, Suite 1060
New York, NY10020

# Table of Contents

PRELIMINARY STATEMENT ..................................................................................4

FACTUAL BACKGROUND......................................................................................4

LEGAL ARGUMENT ..............................................................................................7

I.THE ACCOUNTS AT ISSUE ARE NOT IN NEW YORK AND NOT SUBJECT TO ATTACHMENT.........................................................................................................8

II. PLAINTIFF DOES NOT SATISFY THE REQUIREMENTS FOR AN ATTACHMENT UNDER NEW YORK LAW.............................................................................................12

III. THE COURT SHOULD EXERCISE ITS DISCRETION TO DENY AN ATTACHMENT. ................................................................................................................................14

IV. PLAINTIFF'S UNDERTAKING SHOULD BE INCREASED IF THE ATTACHMENT REMAINS IN EFFECT...........................................................................................18

V. DEFENDANTS ARE ENTITLED TO DAMAGES.................................................19

VI.THE AMOUNT THAT IS ATTACHED IS GROSSLY DISPROPORTIONATE TO THE ALLEGED DAMAGES. ...........................................................................................20

CONCLUSION ......................................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*Altadis U.S.A. v De Tabacos*, 2001 US Dist LEXIS 6892 (SDNY May 17, 2001)......................21

*Am. Bank Note Corp. v Daniele*, 2014 NY Slip Op 30033[U] (Sup. Ct., NY County 2014)........20

*Bank of NY v. Nickel*, 14 AD3d 140 (App. Div. 1st Dept. 2004) ..................................................19

*Computer Strategies v. Commodore Bus. Machs.*, 105 A.D.2d 167 (App. Div. 2d Dept. 1984)..17

*Correspondent Servs. Corp. v J.V.W. Inv. Ltd.*, 524 F. Supp. 2d 412 (SDNY 2007)...................19

*Elliott Assocs., L.P. v. Republic of Peru*, 948 F. Supp. 1203 (S.D.N.Y. 1996)............................14

*Founders Ins. Co. Ltd. v. Everest Natl. Ins. Co.*, 41 A.D.3d 350 (App. Div. 1st Dept 2007) .......15

*Fratelli Italiani, LLC v. Mironova*, 2019 U.S. Dist. LEXIS 127796 (SDNY Apr. 11, 2019).........8

*Global Tech., Inc. v. Royal Bank of Can.*, 34 Misc 3d 1209[A] (Sup Ct, NY County 2012) .......10

*Grupo Mexicano De Desarrollo v. All. Bond Fund*, 527 U.S. 308, 333 (1999)..............................7

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511 (SDNY 2004)..........................22

*John Wiley & Sons, Inc. v. Kirtsaeng*, 2009 US Dist LEXIS 86498 (SDNY Sep. 15, 2009) .......10

*JSC VTB Bank v. Mavlyanov*, 154 AD3d 560 (App. Div. 1st Dept 2017) ....................................18

*Klipsch Grp., Inc. v. Big Box Store Ltd.*, 2012 U.S. Dist. LEXIS 153137 (S.D.N.Y. Oct. 24,
2012)..........................................................................................................................................7

*Mattel, Inc. v. MCA Records*, 296 F3d 894 (9th Cir. 2002) .........................................................13

*Merrill Lynch Futures, Inc. v Kelly*, 585 F Supp 1245 (SDNY 1984) ............................................8

*Michaels Elec. Supply Corp. v. Trott Elec., Inc.*, 231 AD2d 695 (App. Div. 2d Dept 1996) .........8

*Motorola v. Standard Bank*, 24 N.Y.3d 149 (Ct. App. 2014) ......................................................10

*Nat'l Union Fire Ins. Co. v. Advanced Emp't Concepts, Inc.*, 269 A.D.2d 101 (App. Div. 1st
Dept. 2000)..............................................................................................................................10

*Rashi Textiles, U.S.A. v. Rhomberg Textil Gesellschaft M.B.H., of Aus.*, 857 F Supp 1051, 1054
(SDNY 1994) ..........................................................................................................................19

*Shiu v. New Peking Taste Inc.*, 2013 US Dist LEXIS 115671 (EDNY Mar. 14, 2013)................11

*SRL v. FA & Partners, Inc.*, 2016 N.Y. Misc. LEXIS 4533 (Sup. Ct., N.Y. Co. Dec. 7, 2016)...17

*Sylmark Holdings Ltd. v. Silicone Zone Int'l Ltd.*, 783 N.Y.S.2d 758 (Sup. Ct. NY County 2004)9

*VisionChina Media Inc. v. S'holder Representative Servs., LLC*, 109 A.D.3d 49 (App. Div. 1st
Dept. 2013)..............................................................................................................................14

*VNB NY, LLC v. Rapaport*, 2016 NY Slip Op 50099 (Sup. Ct., Kings Co. Jan. 29, 2016) ..........17

**Law Review Articles**

AGAINST FAIR USE: THE CASE FOR A GENERICNESS DEFENSE IN EXPRESSIVE TRADEMARK USES,
101 Iowa L. Rev. 2021, 2049-2050........................................................................................13

BARBIE'S LIFE IN PLASTIC: IT'S FANTASTIC FOR FIRST AMENDMENT PROTECTION – OR IS IT?.....13

**Rules**

CPLR 6201 ......................................................................................................................................7

CPLR 6201(3)................................................................................................................................17

CPLR 6211 ....................................................................................................................................11

CPLR 6212 ..................................................................................................................................7,12

CPLR 6223(b).................................................................................................................................8

CPLR 6201 and 6212 ....................................................................................................................14

CPLR 6212(a), 6201(3) ..........................................................................................................8
CPLR 6212(b)........................................................................................................................18
CPLR 6212(e)........................................................................................................................18
F.R.C.P. 53 ............................................................................................................................20
F.R.C.P. 64 ..............................................................................................................................7
F.R.C.P. 65 ..............................................................................................................................7

Defendants (collectively the "Yokawa Network"), by and through their attorneys DGW Kramer LLP respectfully submit the following memorandum of law in opposition to Plaintiff's motion for an attachment.

## PRELIMINARY STATEMENT

In late December 2020, Plaintiff Mattel Inc. ("Plaintiff") moved *ex parte* for a temporary restraining order and order of attachment, which the Court granted in an order dated December 30, 2020 (the "Order").    Defendants moved separately for temporary modification of that order (Doc. 29), to reduce the scope of the attachment and allow Defendants to resume business operations, which the Court granted on January 22, 2021 (Doc. 37).    Defendants now oppose Plaintiff's motion for prejudgment attachment and seek instead to vacate the attachment, or, in the alternative, to reduce the amount of attached assets to an amount correlated with evidence of actual sales, along with other requested relief as discussed further below.

In support of this motion, Defendants rely on three declarations submitted by Yokawa CEO Xin Cheng—the first declaration (Doc. 29-1) filed on January 14, 2021; the second declaration (Doc. 32) filed on January 20, 2021; and the third declaration, filed concurrently with the instant brief ("Third Decl.").    In addition, Defendants rely on the Declaration of Jacob Chen, also filed concurrently.

## FACTUAL BACKGROUND

Yokawa Network is a Hong Kong based e-commerce company that is engaged in the sale of products through the internet.   Yokawa is located in Hong Kong, SAR, China, and does not have its own business operations physically located in the United States.   (Third Decl., ¶ 5.)

Yokawa's third-party logistics vendor leases some warehouse space in the United States, but Yokawa does not own or control that space.   (Third Decl., ¶ 6.)   Yokawa has about 560 employees.   (Doc. 32, ¶ 25(i).)   All of those employees are based in mainland China or Hong Kong.   (Third Decl., ¶ 7.)

Yokawa sells more than 100 different products under more than 84,000 different SKUs (stock keeping units).   (Doc. 29-1, ¶ 5.)   In the fourth quarter of 2020, Yokawa's revenue was more than $19 million USD.   (Doc. 29-1, ¶ 6.)   Based on its projections, Yokawa anticipated revenues of more than $27 million USD in the first quarter of 2021.   (Doc. 32, ¶ 25(a).)

Among the many products that Yokawa has sold are two "Day of the Dead" dolls (the "Product"), which Yokawa sold for a brief period of time in the fall of 2020.   Yokawa only sold the Product from October 21, 2020, through about November 3, 2020, a period of about two weeks. (Doc. 32, ¶ 3.)   Yokawa chose to stop selling the Product in early November, before receiving any contact from Plaintiff with regards to the Product.   (Doc. 32, ¶ 5.)

During that period, Yokawa also sold other dolls (together, "the Dolls").   Yokawa fulfilled about 7,521 purchase orders of the Dolls through the three websites at issue in this matter. (Doc. 32, ¶ 7.)   The total revenue from sales of the Dolls – which includes more than the "Day of the Dead" dolls at issue here – from the three websites at issue was about $433,798.40.   (Doc. 32, ¶ 7.)   In addition, Yokawa fulfilled about 6,047 purchase orders of the Dolls through its other websites.   The total revenue for sales of the Dolls through all websites was about $783,016.70. (Doc. 32, ¶ 10.)   Yokawa is still reviewing its records to determine the exact number of "Day of the Dead" dolls that were sold, as a subset of the total Doll purchases during the period of late October to early November 2020.   It is certain, however, that the number of the Product sold is

less than the total sales of the Dolls during this time, and therefore these figures represent the upper limit of sales numbers for the Products. For context, revenue of $783,000 is a very small percentage of Yokawa's total revenue for the fourth quarter of 2020.

Yokawa estimates a 10% profit margin on the sale of each of the Dolls. (Doc. 32, ¶ 8.) Thus, based on typical profit margins, Yokawa's total gross profit on these Dolls – which is, again, an overinclusive category – was approximately $78,301.67. (Doc. 32, ¶ 11.) Accordingly, Yokawa's total gross profit on the Product is less than $78,301.67.

On December 30, 2020 at 7:08 PM, this Court granted Plaintiff a temporary restraining order of attachment as requested by Plaintiff (the "Order"). After the Order was served, PayPal froze 11 Hong Kong based PayPal accounts (the "Accounts") which Yokawa Network relies upon, crippling Yokawa Network's ability to conduct business. The net assets frozen as of January 15, 2021 were more than $5,000,000 USD.[1]

Yokawa Network now requests that the Court deny Plaintiff's motion. The attachment is improper due to lack of jurisdiction over these assets. Further, Plaintiff has failed to satisfy the high standard for prejudgment attachment under New York law. Even if the Court finds that Plaintiff has satisfied the statutory requirements, the Court should exercise its discretion to deny the attachment. In the alternative, without waiver, Yokawa seeks a significant downward modification of the attachment order to a figure based on evidence of actual sales of the Product by Yokawa. Due to the improper restraint of Yokawa's assets prior to the initial modification entered by the Court, Yokawa further requests that the Court award damages against Plaintiff

---

[1] On January 22, 2021, after letter briefing and oral argument, the Court entered a revised temporary restraining order, reducing the preliminary attachment to a fixed amount of $2,800,000. (DE 37.)

accordingly, and if the Court now vacates or further reduces the Order, Yokawa seeks additional

damages for the improper attachment.

## **LEGAL ARGUMENT**

Defendants oppose Plaintiff's request for an attachment order under CPLR § 6201.   On

December 30, 2020, Plaintiff filed a Memorandum of Law in support of its motion for attachment

and temporary restraining order.   Plaintiff refiled that document on January 11, 2021, with

supporting exhibits.   (Doc. 22.)   Plaintiff also sought a temporary restraining order pursuant to

F.R.C.P. 64.   *See* Motion, Doc. 22, p. 11 ("the Court should temporarily restrain Defendants'

accounts at PayPal pending the hearing on Mattel's application for an order of attachment.").   It

appears that Plaintiff does not seek a preliminary injunction pursuant to F.R.C.P. 65.[2]  (Doc. 22.)

---

[2]  Although Plaintiff seems to have relied on F.R.C.P. 65 in seeking a temporary restraining
order, it appears that Plaintiff does not request a preliminary injunction, nor does Plaintiff
analyze its request for prejudgment relief under an equitable framework.   If the Court were to
analyze Plaintiff's request under Rule 65, Plaintiff would be limited to equitable relief.   In the
context of copyright and trademark cases, statutory damages are considered a legal remedy, not
an equitable remedy.   *See, e.g., Klipsch Grp., Inc. v. Big Box Store Ltd*., 2012 U.S. Dist. LEXIS
153137, at *21 (S.D.N.Y. Oct. 24, 2012) ("the Court concludes that statutory damages under the
Lanham Act are a remedy at law.").   It is well-established that a preliminary injunction does not
support restraint of assets pending a potential award of money damages.   *See, e.g., Grupo
Mexicano De Desarrollo v. All. Bond Fund*, 527 U.S. 308, 333 (1999) ("Because such a remedy
was historically unavailable from a court of equity, we hold that the District Court had no
authority to issue a preliminary injunction preventing petitioners from disposing of their assets
pending adjudication of respondents' . . . claim for money damages.").   In the context of
trademark and copyright cases, a preliminary injunction should be limited to disgorgement of
profits <u>only</u>.   *See, e.g., Klipsch*, 2012 U.S. Dist. LEXIS 153137, at *30 ("the Court concluded
that $20,000 is sufficient to preserve Plaintiff's remedy of an equitable award of profits should it
ultimately succeed on the merits of this action.").

To the extent Plaintiff seeks, in the alternative, a preliminary injunction pursuant to Rule 65, the
Court should strictly construe the scope of any such injunctive relief.   Before granting a
preliminary injunction, the Court would also need to weigh the equities.   *See id*. at *33
("balancing the hardships" before entering a preliminary injunction).   In this case, the equities

Moreover, because Yokawa ceased selling the Product several months ago, no injunctive relief is necessary.

Under CPLR 6212, Plaintiff must show "that there is a cause of action, that it is probable that the plaintiff will succeed on the merits, that one or more grounds for attachment provided in section 6201 exist, and that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff."   However, even when the statutory factors are met, the Court still retains discretion to deny the request.   The burden of demonstrating the grounds for the attachment is on Plaintiff.   *See* CPLR 6223(b).   Because Plaintiff does not satisfy this burden, the motion for attachment should be denied.

## I.   THE ACCOUNTS AT ISSUE ARE NOT IN NEW YORK AND NOT SUBJECT TO ATTACHMENT.

Because this Court may not attach property that is outside of New York, Plaintiff's attachment motion must be denied.

Attachments are a harsh and drastic provisional remedy that is not lightly to be granted. *Merrill Lynch Futures, Inc. v. Kelly*, 585 F. Supp. 1245, 1259 (SDNY 1984).   Because of this harsh nature, courts have "strictly construed the attachment statute in favor of those against whom it may be employed."   *Michaels Elec. Supply Corp. v. Trott Elec., Inc.*, 231 A.D.2d 695, 695 (App. Div. 2d Dept 1996).   *See also Fratelli Italiani, LLC v. Mironova*, 2019 U.S. Dist. LEXIS 127796, at *21 (SDNY Apr. 11, 2019) ("When, as here, attachment is being used as a means of security . . . courts should issue [the attachment] only upon a showing that *drastic action* is required for

---

weigh against a preliminary injunction.   Nevertheless, if the Court were to grant a preliminary injunction, the maximum scope of any such injunction is the profits from the sale of the Products, which in this case is a maximum of approximately $78,000.   (Doc. 32, ¶ 11.)

security purposes.") (internal quotation omitted) (emphasis in original); *Sylmark Holdings Ltd. v. Silicone Zone Int'l Ltd.*, 783 N.Y.S.2d 758, 774 (Sup. Ct. NY County 2004) ("vague and conclusory allegations, without evidentiary facts indicating a fraudulent concealment of assets, are insufficient for a prejudgment attachment.").

In this matter, Yokawa is a customer of PayPal Hong Kong Limited.   (Third Decl., ¶ 8, 9.)   This is a separate entity from the U.S. entity, PayPal, Inc.[3]   Accordingly, Yokawa's accounts are held by a separate business entity altogether.   Service upon PayPal, Inc., in the United States is therefore not effective to attach assets held through PayPal Hong Kong, Ltd., because they are separate business entities.   *See also* Declaration of Jacob Chen ("Chen Decl."); Exhibits 1 and 2 to Chen Decl. (reflecting user agreement between Yokawa and PayPal Hong Kong Limited).

Even if the Court concludes that PayPal, Inc., and PayPal Hong Kong Limited should be viewed as akin to separate branches of the same bank, Plaintiff's attachment request is still outside the Court's reach.   Because Yokawa's Hong Kong PayPal accounts are not within the jurisdiction of this Court for prejudgment attachment, the motion for attachment must be denied.

Courts have routinely held that "a judgment creditor's service of a restraining notice on a garnishee bank's New York branch is ineffective under the separate entity rule to freeze assets held in the bank's foreign branches."   *Motorola v. Standard Bank*, 24 N.Y.3d 149, 163 (Ct. App.

---

[3] The 2018 Form 10-K filing by PayPal Holdings, Inc., with the Securities and Exchange Commission identifies PayPal Hong Kong Limited as follows: "In Hong Kong, we serve our customers through PayPal Hong Kong Limited ('PayPal Hong Kong'), which is licensed by the Hong Kong Monetary Authority as an issuer of stored value facility ('SVF Licensee')."   The 2018 Form 10-K further says: "In the U.S., PayPal, Inc. has obtained licenses to operate as a money transmitter (or its equivalent) in the states where it is required, as well as in the District of Columbia, the U.S. Virgin Islands and Puerto Rico."   *Available at* https://www.sec.gov/Archives/edgar/data/0001633917/000163391718000029/pypl201710-k.htm.

2014).   When dealing with a national bank, for instance, a bank account that is maintained outside of New York may not be attached by a New York court, even if that same bank maintains a branch within New York.   Even if PayPal, Inc., maintains a New York office, there is no evidence that PayPal Hong Kong Limited has any presence in the United States.   "In order to be subject to attachment, property must be within the court's jurisdiction, and the mere fact that a bank may have a branch within New York is insufficient to render accounts outside of New York subject to attachment merely by serving a New York branch."   *Nat'l Union Fire Ins. Co. v. Advanced Emp't Concepts, Inc.*, 269 A.D.2d 101, 101 (App. Div. 1st Dept. 2000) (internal citation omitted).

In *John Wiley & Sons, Inc. v Kirtsaeng*, 2009 US Dist LEXIS 86498 (SDNY Sep. 15, 2009) for instance, the plaintiff sought a prejudgment order of attachment of the defendant's Bank of America account and served Bank of America at their New York branch.   The defendant withdrew money from his account from the California branch.   This Court noted that it "could not have attached accounts in a bank's branch in California."   *Id.* at 16.   No one disputed that Bank of America as a whole was subject to jurisdiction, but because the account was based in California, this Court was unable to attach those accounts.   *See also Global Tech., Inc. v Royal Bank of Can.*, 34 Misc. 3d 1209[A], 1209A (Sup. Ct. NY County 2012) (concluding that "under the separate entity rule, service of the petitioner's restraining notice upon respondent's branch in Manhattan did not restrain Moto's bank accounts in Canada.").   Because Yokawa's accounts are in Hong Kong, held through a Hong Kong entity, any restraining notice served on PayPal, Inc., in Nebraska or New York or elsewhere is not effective as to Yokawa's accounts outside the United States.

The rules governing attachment further contemplate that orders of attachment will be served within New York State.   *See* CPLR § 6211 ("An order of attachment . . . shall specify the amount to be secured by the order of attachment . . . , be indorsed with the name and address of the plaintiff's attorney and shall be directed to the sheriff <u>of any county or of the city of New York</u> where any property in which the defendant has an interest is located or where a garnishee may be served.") (emphasis added).

In the instant case, all the accounts which have been attached are Hong Kong-based accounts, opened with and maintained by PayPal Hong Kong Limited.   (Third Decl., ¶ 8, 9; *see also* Exhibit to Third Decl.; Chen Decl.)   Each and every account is registered with a Hong Kong address as Yokawa Network, which is a Hong Kong company.   None of the accounts attached are located in New York.   Moreover, as stated, PayPal Hong Kong Limited is a Hong Kong entity, not a U.S.-based entity.

Yokawa anticipates that Plaintiff may argue that the attachment should be prolonged to permit additional discovery. But there is such no basis for such discovery.   Yokawa has, through both sworn testimony and documentary evidence, shown that all the assets that Plaintiff has sought to attach are located in Hong Kong. (Third Decl., ¶¶ 8-12; Exhibit to Third Decl.; Chen Decl.). Plaintiff has not presented the Court with any evidence otherwise.   Plaintiff bears the burden of establishing that it has met all requirements for obtaining an order of attachment, but has not done so.   *See, e.g., Shiu v. New Peking Taste Inc.*, 2013 US Dist LEXIS 115671, at *40, n. 14 (EDNY Mar. 14, 2013).

Accordingly, on this basis, Plaintiff is not entitled to an attachment with respect to the Accounts, and the Plaintiff's motion must be denied.

11

## II.   PLAINTIFF DOES NOT SATISFY THE REQUIREMENTS FOR AN ATTACHMENT UNDER NEW YORK LAW.

As noted, Defendants contend that the Court lacks jurisdiction and authority to enter the requested attachment against assets held in Hong Kong under PayPal Hong Kong Limited. Without waiver of that argument, Defendants also contend that Plaintiff has not satisfied the substantive requirements for an attachment, pursuant to CPLR 6212.

Under CPLR 6212, Plaintiff must show "that there is a cause of action, that it is probable that the plaintiff will succeed on the merits, that one or more grounds for attachment provided in section 6201 exist, and that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff."

Because Plaintiff has not demonstrated a sufficient likelihood of success to support this harsh and drastic prejudgment remedy, the attachment should be denied.

The exhibits relied upon by Plaintiff demonstrate that the term "barbie" is being used as a generic term, interchangeable with "doll."[4]   Notably, Plaintiff's Exhibit F (Doc. 24-2) shows the Product being advertised as a "beauty doll" and a "collectible doll," without the word "barbie" appearing at all.   Likewise, in the exhibit showing a GoodMeNow advertisement (Doc. 24-4), the word "barbie" does not appear.   Instead, the advertisement uses the phrase "Collectible Beauty Doll" and "Beauty doll."   In the document purporting to show a purchase of the Product from Yokawa (Doc. 24-3), the word "barbie" does not appear anywhere either.   Only two of Plaintiff's exhibits (Doc. 24-1 and Doc. 24-7) purport to show that the product is identified as a "barbie." However, in Doc. 24-1, the word "barbie" is in only the heading and therefore one cannot tell

---

[4]  Defendants are still verifying the contents of the screenshots taken by Plaintiff, along with reviewing their records for other marketing materials for the Product at issue.   For purposes of this opposition, Defendants assume the exhibits submitted by Plaintiff are accurate, but reserve the right to supplement the record in this regard.

whether the term was intended to be "Barbie" or "barbie," that is, whether it is a proper noun or merely a noun. The seemingly interchangeable use of the word in the exhibits submitted by Plaintiff indicates that the word is being used as a generic noun, akin to the word doll. Likewise in Doc. 24-7, the word is listed in conjunction with a capitalized phrase and appears to have been capitalized for that reason. At no point has Plaintiff alleged that Yokawa Network ever used "Barbie ®." Nor is it alleged that Yokawa ever represented that the Products were manufactured by Mattel.

There is scholarly support of Defendants' argument that "barbie" has become generic. In the article AGAINST FAIR USE: THE CASE FOR A GENERICNESS DEFENSE IN EXPRESSIVE TRADEMARK USES, 101 Iowa L. Rev. 2021, 2049-2050, the author explains:

> Rather, the mark "Barbie" is here used as a simple stand-in for that that entire category of product: plastic dolls of unrealistic proportions made for young girls. "Barbie" in this sense . . . could be any kind of plastic doll that symbolizes to young girls what a female is supposed to be (docile, blonde, beautiful) . . . . That is, by using the word "Barbie" in their song, the band Aqua did not intend to comment on Barbie itself as they simply used the mark as shorthand, as metaphor[.]

Other authors have also noted that the word "barbie" is at risk of genericide, that is, being found to be a generic word for a category of plastic doll. *See, e.g.* BARBIE'S LIFE IN PLASTIC: IT'S FANTASTIC FOR FIRST AMENDMENT PROTECTION – OR IS IT? MATTEL, INC. V. MCA RECORDS, INC., 296 F.3D 894 (9TH CIR. 2002), 29 Dayton L. Rev. 405, 420 (discussing how the 9th Circuit decision in *Mattel, Inc. v. MCA Records*, 296 F3d 894, 900 (9th Cir. 2002) "may have marked the beginning of the end for the Barbie mark.").

Accordingly, because the word "barbie" is used only periodically in the exhibits presented by Plaintiff in a way that demonstrates generic use of the term, Plaintiff has not demonstrated

sufficient likelihood of success on the merits to justify prejudgment attachment of assets under these circumstances.[5]   The attachment motion should therefore be denied.

### III.   THE COURT SHOULD EXERCISE ITS DISCRETION TO DENY AN ATTACHMENT.

Even if the Court concludes that it has jurisdiction and that Plaintiff satisfies the requirements for an attachment under New York law – all of which Defendants deny – the Court should nevertheless exercise its discretion to deny any attachment.   Even when the statutory requirements are met, the Court can exercise its discretion to deny the attachment.   *See Elliott Assocs., L.P. v. Republic of Peru*, 948 F. Supp. 1203, 1211 (SDNY 1996) ("The granting of prejudgment attachments pursuant to CPLR §§ 6201 and 6212 is discretionary with the district courts, and even when the statutory requisites are met, the order may be denied.") (internal quotation omitted).   This principle especially applies where an attachment is "likely to be oppressive" and may cause "irremediable hardship."   *Id.* at 1214*; see also VisionChina Media Inc. v. S'holder Representative Servs., LLC*, 109 A.D.3d 49, 59-60 (App. Div. 1st Dept. 2013) ("Attachment is a harsh remedy, and is construed narrowly in favor of the party against whom the remedy is invoked. . . . Whether to grant a motion for an order of attachment rests within the discretion of the court.") (internal quotations omitted).

Thus, in exercising this discretion, the Court should weigh the requirement that, in addition to meeting the statutory requirements for an attachment, "the party seeking attachment must demonstrate an identifiable risk that the defendant will not be able to satisfy the judgment."   *Id.*, at 60.

---

[5]   As the litigation continues, Defendants intend to raise additional merits-based defenses in this litigation and to incorporate additional authority in support of their genericide argument.

Plaintiff cannot satisfy this requirement.   Plaintiff has relied upon speculation and the mere fact that Defendants are located in Hong Kong to seek the Court's discretion in granting an attachment.   However, it is well-established that there must be more than a showing that the attachment would, in essence, be "helpful."   *Founders Ins. Co. Ltd. v. Everest Natl. Ins. Co.*, 41 A.D.3d 350, 351 (App. Div. 1st Dept. 2007).

Plaintiff primarily attempts to rely on purported and unauthenticated statements from an online forum in its effort to invoke the Court's discretion against Yokawa.   However, as stated in the Third Declaration of Xin Cheng, it is a common tactic in the e-commerce business for competitors to post negative information about other e-commerce vendors online, including what appear to be negative reviews.   (Third Decl., ¶ 13.)

The Internet postings on the PayPal community forum, relied upon by Plaintiff for its attempted negative inferences against Yokawa, are not verified, endorsed, or monitored by PayPal. (Doc. 30-2 and 30-3.)   In fact, PayPal's "Community Help Forum Agreement" governing the PayPal community forum, clearly states that "[a]ny opinions or information made available as part of such User Content are those of the respective users and not of PayPal . . .   PayPal does not endorse and is not responsible for the accuracy, usefulness or applicability of User Content." (*Available at* https://www.paypal-community.com/t5/user/termsofservicepage).   Nearly all of the Internet postings relied upon by Plaintiff are anonymous.   Such anonymous postings amount to nothing more than vague allegations in an informal forum discussion without any indicia of reliability or substantiation, and fail to satisfy Fed. R. Evid. 901(a), which requires evidence

sufficient to support a finding that the item is what the proponent claims it is.   Therefore, these unverified statements should not be taken as probative of any facts about Yokawa.[6]

The evidence to date shows that Yokawa has maintained a high total balance in its PayPal Hong Kong Limited accounts, in the current amount of approximately $5,000,000 USD.   Yokawa generated more than $19 million USD in the fourth quarter of 2020, and Plaintiff has submitted evidence to show that Yokawa has obtained substantial funds through their PayPal accounts. Plaintiff offers no evidence to show that Yokawa is at risk of being uncollectible or insolvent.

The case of *Sylmark Holdings*, 783 N.Y.S.2d 758, is instructive.   In that case, plaintiff sought an attachment of assets against nondomiciliary Hong Kong based defendants not registered to do business in New York State.   The court found no need for an attachment of assets because the plaintiffs had failed to demonstrate "a real identifiable risk that the defendants will be unable to satisfy any judgment obtained by plaintiffs."   *Id.* at 773.   The court found no evidence that the defendants "would conceal or convert any of their assets were it not for an attachment order, or that they would be unlikely to satisfy the potential judgment."   *Id.*   *See also VisionChina Media*, 109 A.D.3d at 61-62 (concluding that attachment order was an abuse of discretion where "[t]he sellers have shown no evidence that the buyers lack sufficient assets, or that they will choose to hide or otherwise dispose of their assets.").

Plaintiff's moving papers provide the Court with no evidence, other than pure speculation, that Yokawa Network is anything other than a major company with substantial ongoing revenue

_____

[6]  Further, many of the purported complaints are related to shipping delays or other shipping problems during recent months.   As attested in the Third Declaration of Xin Cheng, international shipping has been seriously challenged by the global COVID-19 pandemic. (Third Decl., ¶¶ 3-4.)   Any such shipping delays or issues related to global supply chain problems are far outside the control of Yokawa.

16

and assets, which has more than enough assets to satisfy any final judgment on the merits of this case.   The mere fact that a prejudgment attachment would be "helpful" to Plaintiff is not enough to support this drastic remedy.

Plaintiff also speculate that Defendants' use of allegedly inconsistent and/or incomplete contact information on its domain name registrations and website demonstrate willfulness and an intent to evade their legal obligations, providing further grounds for attachment.    (Doc. 22, p. 13). Contrary to these insinuations, Yokawa has been forthcoming in this litigation, including by willingly disclosing to Plaintiff the identity of the real party in interest – Yokawa Network, Ltd. – rather than attempting to evade identification.    In addition, Yokawa has voluntarily disclosed its sales figures for the items at issue.

It is unclear what the "further grounds" and legal authorities Plaintiff actually relied upon. New York courts have consistently held that "the plaintiff must demonstrate that the defendant has concealed or is about to conceal property in one or more of several enumerated ways, and has acted or will act with the intent to defraud creditors or to frustrate the enforcement of a judgment that might be rendered in favor of the plaintiff."   *VNB NY, LLC v. Rapaport*, 2016 NY Slip Op 50099 (Sup. Ct., Kings Co. Jan. 29, 2016) (citations omitted).    "[M]ere removal, assignment or other disposition of property is not grounds for attachment."   *Computer Strategies v. Commodore Bus. Machs.*, 105 A.D.2d 167, 173 (App. Div. 2d Dept. 1984).

Plaintiff has not come forward with evidence to support its negative speculation against Yokawa.    "The moving papers must contain evidentiary facts, as opposed to conclusions[.]" *Id*.    Thus, it is not sufficient to merely raise a suspicion of an intent to defraud.   *See Skycom SRL v. FA & Partners, Inc*., 2016 N.Y. Misc. LEXIS 4533, at *6-7 (Sup. Ct., N.Y. Co. Dec. 7, 2016)

("It is not sufficient for a plaintiff to provide affidavits in support of an attachment which contain allegations raising a suspicion of an intent to defraud."). Rather, "it must appear that such fraudulent intent really existed in the mind of the defendants, and not merely in the ingenuity of the plaintiffs." *Id*. (citation and internal quotation marks omitted).

Accordingly, the Court should exercise its discretion to deny the attachment, as Plaintiff has failed to put forth anything more than mere speculation to support the harsh prejudgment remedy of an attachment.

## IV.   PLAINTIFF'S UNDERTAKING SHOULD BE INCREASED IF THE ATTACHMENT REMAINS IN EFFECT.

Under CPLR 6212(b), plaintiff is required to give an undertaking in conjunction with obtaining an order of attachment. Under the temporary restraining order, Plaintiff is required to post security of only $5,000. This amount is patently inadequate, given the size of Yokawa's business. Defendants request that, if the Court maintains the attachment in any amount, that Plaintiff should be required to post security in an amount no less than the amount of Defendants' attached funds.

The current security is not tied to the potential damages to Yokawa and therefore must be modified. The undertaking required must be rationally related to the potential damages to Defendants in the event the attachment is found to have been unwarranted. *JSC VTB Bank v. Mavlyanov*, 154 AD3d 560, 563 (App. Div. 1st Dept 2017). In *JSC VTB Bank*, for instance, the Appellate Division ordered an undertaking set at $1 million because the plaintiff sought an attachment of a company that was valued at $1 million. Given Yokawa's revenue, its valuation

is much higher than that.   *See* Doc. 32, ¶ 25(k) (Yokawa's business valued at estimated $250 million to $400 million).

## V.    DEFENDANTS ARE ENTITLED TO DAMAGES

Because Defendants' PayPal accounts were wrongfully attached and frozen in their entirety until the Court entered a modification order on January 22, 2021, Defendants are entitled to damages under CPLR 6212(e), for which Plaintiff should be held strictly liable.   In addition, if the Court vacates or further modifies the attachment order, Defendants are entitled to additional damages as well.

Pursuant to CPLR 6212(e):

> "The plaintiff shall be liable to the defendant for all costs and damages, including reasonable attorney's fees, which may be sustained by reason of the attachment if the defendant recovers judgment, or if it is finally decided that the plaintiff was not entitled to an attachment of the defendant's property. Plaintiff's liability shall not be limited by the amount of the undertaking."

Under the statute, in the event that a plaintiff was not entitled to an attachment, a plaintiff is "strictly liable for damages caused by a wrongful attachment" and also required to pay fees and costs.   *Rashi Textiles, U.S.A. v. Rhomberg Textil Gesellschaft M.B.H., of Aus.*, 857 F. Supp. 1051, 1054 (SDNY 1994).   A defendant does not have to prevail on the merits to be entitled to damages for a wrongful attachment, and dismissal of the attachment on any basis, is sufficient to support an award of damages and attorney's fees.   *Correspondent Servs. Corp. v. J.V.W. Inv. Ltd.*, 524 F. Supp. 2d 412, 417 (SDNY 2007). The statute requires that the court award damages, including for attorneys' fees, without a showing of fault, in the event of a wrongful attachment.   *Bank of NY v. Nickel*, 14 AD3d 140, 149 (App. Div. 1st Dept. 2004).

Because the temporary restraining order has now been modified and reduced to $2,800,000 with no further restraint (Doc. 37), Yokawa is entitled to damages for the negative effect of the overbroad attachment that was sought by Plaintiff.   Yokawa promptly put Plaintiff on notice of the extreme damage being caused by the attachment order, yet Plaintiff took no steps to reduce the harm.   Plaintiff continued to object to modification of the initial temporary restraining order until the Court ordered modification.   Accordingly, Plaintiff should be held strictly liable for the resulting damage.   Further, if the Court vacates the attachment altogether or reduces it again, Defendants should be entitled to additional damages.

Yokawa Network seeks an order entitling them to damages under CPLR 6212(e) and the appointment of a Special Master pursuant to Fed. R. Civ. P. 53(b) accordingly for the computation of damages, attorney's fees, and costs.   Yokawa has submitted preliminary figures to support the calculation of damages.   (Doc. 32, ¶ 25.)   The appointment of a Special Master is a preferred method for calculating damages in the event of a wrongful attachment.   *See, e.g., Am. Bank Note Corp. v Daniele*, 2014 NY Slip Op 30033[U], *2 (Sup. Ct., NY County 2014) (special referee was assigned to compute damages as arising out of a wrongful attachment).

## VI.   THE AMOUNT THAT IS ATTACHED IS GROSSLY DISPROPORTIONATE TO THE ALLEGED DAMAGES.

Although no attachment is appropriate in this case, to the extent the Court concludes that an attachment is warranted, the amount of the attachment must be significantly reduced.   The amount that has been preliminarily attached is grossly disproportionate to the claims asserted by Plaintiff and the range of potential damages.

Plaintiff's primary claim for damages stems from its second claim for trademark counterfeiting, under which Plaintiff seeks $2 million in statutory damages.   However, the facts to date do not support a claim for statutory damages, nor statutory damages of $2,000,000. "Factors to be considered in determining the magnitude of such an award include economic figures like the defendant's profits, the plaintiff's lost revenues, and the value of the trademark; the defendant's culpability as measured by its willfulness and its cooperation in litigation; and the deterrent value of a statutory damage award."  *Altadis U.S.A. v. De Tabacos*, 2001 US Dist LEXIS 6892, at \*16 (SDNY May 17, 2001) .

However, as a general rule, even in cases of willful infringement, courts issue awards that are "well below" the statutory maximum.   *See, e.g., Victorinox AG v. United States Flash & Tech. LLC*, 2010 US Dist LEXIS 141295, at \*8 (SDNY Oct. 21, 2010) (discussing the aggregate of cases involving willful infringement and ultimately issuing an award of $200,000 for each trademark violation as both statutory damages and compensation for attorneys' fees and costs.).   In *Rolex Watch U.S.A., Inc. v. Brown*, 2002 US Dist. LEXIS 10054, at \*1 (SDNY June 5, 2002), for instance, the Court limited statutory damages based on the approximate profit per infringing product, multiplied by the number of products sold and awarded damages accordingly.

In the instant case, the Product was only sold from about October 21, 2020 to about November 3, 2020, before sales were discontinued by Yokawa.   During that time, Yokawa Network sold – at most – 13,818 dolls at issue throughout the United States, generating total revenues of about $783,016.70, and total profits of about $78,301.67.

The Court should not reflexively use the maximum statutory damages as a basis for calculating the amount of attachment.   The statutory damages provision was added because

defendants' records are sometimes nonexistent, inadequate or deceptively kept, making proof of actual damages in some cases difficult if not impossible.   *Gucci Am., Inc. v Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511, 520 (SDNY 2004).   In the instant case, Yokawa Network has not only kept records but has voluntarily disclosed information as to and concerning the sales, revenues and profits of the allegedly infringing product.

Defendants respectfully submit that, if the Court modifies rather than vacates the attachment, the amount of the attachment should be significantly reduced to an amount related to evidence of actual sales and actual profits, which in this case are not more than about $78,000.

## CONCLUSION

Wherefore, Defendants respectfully request that the Court vacate the attachment, appoint a Special Master for computation of damages against Plaintiff accordingly, and enter any other relief as this Court may determine to be just.

Dated:        New York, New York
              January 22, 2021

By: /s/ Katherine Burghardt Kramer
Katherine Burghardt Kramer, Esq.
Jacob Chen, Esq.
RongPing Wu, Esq.
DGW Kramer LLP
Attorneys for Defendants
One Rockefeller Plaza, 1060
New York, NY 10020
Telephone: 917-633-6860