L1LCMATC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

MATTEL, INC.,

        Plaintiff,

    v.                                    20CV11075
                                              Telephone Conference
THE ENTITIES DOING BUSINESS AS
GOODMENOW AT THE URL
GOODMENOW.COM, THE ENTITIES
DOING BUSINESS AS
MEETGOODTIMES AT THE URL
MEETGOODTIMES.COM, THE
ENTITIES DOING BUSINESS AS
FEELITNICE AT THE URL
FEELITNICE.COM, THE ENTITIES
DOING BUSINESS AS THE PAYPAL
MERCHANT YOKAWA NETWORK
LIMITED, JOHN DOE NOS. 1-5,

        Defendants.
------------------------------x
                                              New York, N.Y.
                                              January 21, 2021
                                              12:11 p.m.

Before:

                HON. NAOMI REICE BUCHWALD,

                                          District Judge

                          APPEARANCES

DUNNEGAN & SCILEPPI LLC
     Attorneys for Plaintiff
BY:  WILLIAM IRVIN DUNNEGAN

DGW KRAMER LLP
     Attorneys for Defendants
BY:  KATHERINE BURGHARDT KRAMER

SOUTHERN DISTRICT REPORTERS, P.C.••
(212) 805-0300

L1LCMATC

         (The Court and all parties appearing telephonically)

         THE COURT:  Good morning.  This is Judge Buchwald. Let me begin by taking attendance.  Who's on the phone for the plaintiff?

         MR. DUNNEGAN:  Your Honor, Bill Dunnegan.

         THE COURT:  Who's on the phone for the defendant?

         MS. KRAMER:  Hi, your Honor.  This is Katie Burghardt Kramer.

         THE COURT:  All right.  As you're well aware, you've sent me a series of letters concerning the existing attachment in addressing the situation with respect to PayPal, where the funds are attached in PayPal's -- disclosing PayPal's relationship with the defendants.

         By the way, on the subject of posting of information about the defendants, Mr. Dunnegan, I have taken steps in chambers to have the filings from yesterday pulled off of the docket and I will ultimately order them sealed, but we've been, in the informal way this morning, been able to pull them off the docket.  The next time this happens, best thing to do is just call me and I can take care of it or at least try to, consistent with when the clerk's office is actually open.

         All right.  That being said, I think that the answer, at this point, is that the parties should work together to present to me an amended order of attachment that, in my mind, does at least two things that have been the subject of the

L1LCMATC

correspondence between you.

First is an agreement, for now, without prejudice, to further briefing an argument that the amount of the attachment, for now, can be $2.8 million.  Secondly, the order ought to make it clear, because I gather that there was some dispute that the attachment order was not intended to affect the ability of the defendants to continue to do business through PayPal.  That, of course, I'm not commenting in any way on PayPal's view of its desire to do business with the defendants, but simply that the attachment order was not intended to halt the business operations of the defendants.

As to the subject matter of the letters concerning PayPal's apparent hold, shall we call it, reserve on the defendant's accounts, that is not an issue for this Court at this time.  All I am concerned with is that the agreed upon $2.8 million be attached at PayPal.  What happens to any funds above that amount is not this Court's concern.

This is also not the time to resolve any possible argument of priority.  As I read the correspondence from PayPal, PayPal is not suggesting, in any way, that it would not abide by this Court's order of attachment.

I would just ask the parties, has what I have said resolved the problem for now?

MR. DUNNEGAN:  Your Honor, this is Bill Dunnegan.

I am unclear as to the precise amount that is the

L1LCMATC

1  subject matter of the attachment.
2          If PayPal is saying -- and my confusion results from
3  the fact that PayPal is saying that whatever is there right now
4  can only be withdrawn for the purpose of refunds to PayPal's
5  customers. Now, if PayPal, for whatever reason, lowers that
6  amount from what is apparently a $4.5 million, as of yesterday,
7  to let's just say, for example, $4 million, are you suggesting
8  that the result is that the defendant can then take that half a
9  million dollars, the difference between 4.5 and 4, and move it
10 out of the country?
11         THE COURT: Why not?
12         MR. DUNNEGAN: Well, it would seem to me that leaves
13 us with nothing, because the remaining --
14         THE COURT: 2.8 is held by PayPal.
15         MR. DUNNEGAN: That's correct, but the priority of
16 that money, according to PayPal — and PayPal is holding the
17 money — is that that is used for PayPal's purposes and not any
18 other purpose, which means if PayPal has the need to repay
19 customers that money, then it is no longer available for
20 execution --
21         THE COURT: Why don't we wait to see if PayPal is
22 prepared to dip into the 2.8, because you're asking me to
23 resolve a priority issue now and I don't --
24         Hold on one second.
25         (Pause)

1           THE COURT:  Let's say, Mr. Dunnegan, you found a bank
2  account and you attached a bank account, but it turned out that
3  before you attached the bank account, a judgment had been
4  awarded against the defendant in this other hypothetical case.
5  It might turn out that that judgment took priority over the
6  attachment, but this would not be the moment to resolve that.
7  So, PayPal has been forthright, it seems, with the parties.
8           It doesn't seem to me to have, at any point, said that
9  it would violate a court injunction or a court attachment.  I
10 think it can wait and find out if they intend to do that or
11 have the nerve to do that without telling the Court in seeking
12 permission.
13          MR. DUNNEGAN:  Your Honor --
14          THE COURT:  The point is that there is a lot of money
15 there that -- I mean, I don't really care how much more there
16 is, but there is a lot more than 2.8.
17          MR. DUNNEGAN:  I would agree with that, putting aside
18 the issue of liens.  But the point I wanted to make is that, in
19 your hypothetical involving the bank account, while there could
20 be a dispute between the prior judgment holder and the
21 attachor, it seems to me there shouldn't be a situation where
22 an amount of money in the bank account is given to the owner of
23 the bank account until it is determined that both the judgment
24 and the --
25          THE COURT:  But you're assuming that the bank is going

1    to violate the attachment.  The attachment is there.  It has a
2    limit.  The attachment of 2.8 is high.  It may be correct, it
3    may not be correct, but it is fully protective of any amount
4    that you can possibly dream to get in this case.  And to insist
5    that somehow you get the right to go over 2.8 is just --
6    Mr. Dunnegan, you are pushing it.
7             MR. DUNNEGAN:  Your Honor, I think there is one point
8    that, it's probably my fault, I'm not getting across.  The
9    point I want to try to get across is that for the 2.8, there
10   may be competing demands on that point, on that 2.8.  At the
11   end of the day, PayPal may say no, we have to take $2.5 million
12   of that and give it back to our customers.
13            THE COURT:  In order to do that, it has to violate,
14   has to be prepared to ignore the order of attachment.  I'm
15   thinking I don't tend to get ignored that way.  It's not me
16   personally, it's a federal court order subject to contempt.
17            MR. DUNNEGAN:  I agree with that.  But let's take it
18   to the point of the end of the game, which is everyone's rights
19   are adjudicated.  If it's adjudicated that the plaintiff is
20   entitled to, let's call it $2 million, and if it's adjudicated
21   that PayPal's customers are adjudicated to be entitled to
22   $2 million and PayPal is only holding $2.8 million, it would
23   seem to me that that creates some sort of problem if the
24   defendant has already walked away with a million dollars.
25            THE COURT:  Mr. Dunnegan, you only get an attachment

1   up to an amount.  Given the amount of this attachment, we're
2   not going to give you double just in case something happens in
3   the future, because your concept that most of this money is
4   going to actually be returned to customers doesn't quite strike
5   me as realistic.
6           If, at that point, PayPal raises the issue of whether
7   it can or cannot or what the law says about priority, maybe the
8   customers would be entitled to it ahead of you, because maybe
9   it was really their money out-of-pocket that they got a product
10  that was not what they intended to buy where, in your case,
11  your damages are not necessarily real.  The statutory damages
12  do not reflect an actual loss to Mattel, it is a punishment to
13  the defendants.
14          So, that may be that, in the end, you will not prevail
15  versus some other interest.  There isn't a guarantee that, when
16  you attach that, the money is not going to be already spoken
17  for.
18          MR. DUNNEGAN:  I complete --
19          THE COURT:  Just as life.
20          MR. DUNNEGAN:  I completely agree with your last
21  statement, but it would seem to be that that is inconsistent
22  with saying that the defendant can take out money in excess of
23  the 2.8.  See, the --
24          THE COURT:  You want to bond this for $5 million?  And
25  one, the issue that you're rather demanding the position causes

L1LCMATC

1  them serious business less, and we have to litigate that?
2  Really?  Mr. Dunnegan, 2.8 is $2.8 million.
3           MR. DUNNEGAN:  But, your Honor, it really isn't if
4  someone is going to get their hands on it first and --
5           THE COURT:  But it may not be real in any event.  It
6  may not be the result of this case.
7           MR. DUNNEGAN:  I agree.  That's my point.
8           THE COURT:  It may be multiples more than you are
9  ultimately entitled to.  We don't know yet.
10          How many of these dolls were actually sold?  We don't
11 know what Mattel's actual damages are, we don't know what your
12 loss sales are.  We don't know.  It may be much more than
13 you're entitled to or maybe it is so outrageous that you are,
14 in fact, entitled to statutory damages, but the amount is at
15 the upper limits.
16          I think that PayPal is not going to violate an
17 attachment order.  It may turn out that, in fact, the monies
18 that you attached were previously spoken for, like in my
19 hypothetical, but we cannot resolve that now.  We just cannot.
20          MS. KRAMER:  Your Honor, if I may, this is Katie
21 Kramer.
22          I hear you loud and clear on the point that you're not
23 resolving the issue of priority at this time.
24          I have a question about whether the Court has any
25 opinion on whether we need to specify specific accounts that

1 are frozen or if it would be fine, from the Court's
2 perspective, for the proposed attachment order to just say
3 accounts adding up to a total of $2.8 million and not get into
4 the nitty-gritty of, this account has $152,000 in it and this
5 account has $412,000. If it's fine for us to just say this is
6 the total amount, this is the order, PayPal, make it happen.
7     THE COURT: My instinct would be just straight 2.8,
8 because if it's closed by that -- there is no intent on the
9 part of the Court in issuing the attachment order to prevent
10 defendants from continuing to do business utilizing PayPal. If
11 that's the case, these accounts are going to fluctuate. So, it
12 wouldn't matter to me, personally, which accounts were the
13 subject, so long as the 2.8 was held back.
14     MS. KRAMER: Understood. Thank you.
15     MR. DUNNEGAN: Your Honor, Bill Dunnegan again.
16     You have used the language PayPal not lowering the
17 amount below 2.8. So, is it correct that you're saying that,
18 even if it is going to pay a customer, PayPal cannot lower the
19 amount beyond 2.8 without a further modification of this
20 intended order?
21     THE COURT: Yes.
22     MR. DUNNEGAN: Okay.
23     THE COURT: I mean, it seems to me that if I have
24 ordered 2.8 to be frozen — at PayPal, frozen means frozen — and
25 if PayPal wants to take the position that utilizing some

portion of the 2.8, that they take the position that they are entitled under the law to use some part of that to pay a customer a refund, then they need to check with me if that's all right, because it may be all right or it may not be all right.  The question is a matter of priority.

MR. DUNNEGAN:  Yes.  I understand that your Honor is not resolving that today, but leaving open the risk that the priority could be of the PayPal customers and the plaintiffs would end up with nothing or could end up with nothing.

THE COURT:  Oh, really.  Come on, Mr. Dunnegan.  It is not good lawyering to so exaggerate.

MR. DUNNEGAN:  Well, your Honor, PayPal, right now, is taking the position that they are not releasing any money, any of this $4.5 million.

THE COURT:  Probably, do you think that might have something to do with this attachment order?

MR. DUNNEGAN:  I think it was brought to their attention as the result of the attachment order, but they say they made their own independent review, that they need to retain that money, and I have no reason to say that they're fibbing.

THE COURT:  All right.  And if they do, it may turn out that that money has -- they may have a priority to it versus you, that may happen, but that's the exact same thing as the bank account and the preexisting judgment.

|   |   |
|---|---|
| 1 | MR. DUNNEGAN:  Right.  The analysis there between the |
| 2 | two creditors is simply one of commercial transaction and |
| 3 | Article 9 law, but the gap here is that the defendant will be |
| 4 | allowed to take certain amounts out of the account not subject |
| 5 | to anyone's lien unless PayPal decides it's all going to stay |
| 6 | there. |
| 7 | THE COURT:  But if PayPal releases it, presumably, |
| 8 | it's because they have decided that there is not another demand |
| 9 | for those funds that they have to satisfy. |
| 10 | MS. KRAMER:  Your Honor, this is Katie Kramer again. |
| 11 | If I may, I feel like your Honor has been very clear |
| 12 | on the proposed order that you would like us to put together, |
| 13 | the terms of that order, and it strikes me that Mr. Dunnegan |
| 14 | has made these points a couple of times.  It may be just as |
| 15 | well for us to have a chance, Mr. Dunnegan and I, to confer |
| 16 | once we're done with this conference, put together a proposed |
| 17 | order and get that submitted expeditiously so that PayPal can |
| 18 | modify the attachment. |
| 19 | THE COURT:  I mean, listen, Mr. Dunnegan, Ms. Kramer, |
| 20 | you have no idea how much time my law clerk and I have spent. |
| 21 | If you think that this is an unconsidered decision, you are |
| 22 | grossly wrong.  Frankly, more than enough time has been spent. |
| 23 | And that's directed to both of you; okay? |
| 24 | So, that's the ruling.  Put the order together. |
| 25 | Mr. Dunnegan, you don't like it, take it up on appeal if you |

1   can; okay?  Enough is enough.  You, at this point, have to
2   realize that the Court has rejected your position.
3             MR. DUNNEGAN:  I understand that, your Honor.
4             THE COURT:  All right.  Then we have a long way to go
5   on this case.  You need to understand something, I am not a
6   casual judge.  I spend a lot of time and I take my job super
7   seriously.  It isn't effective with me once I have heard you
8   out.  I heard you out in multiple writings and I heard you out
9   orally on Tuesday evening for about -- I think the call went on
10  about an hour and a half.  When I have reached a result, it is
11  a considered result and it does not work in my courtroom that
12  the last person can talk.  Accept the notion that it is well
13  thought out and that I have considered your positions.
14            Now, write the order, get along well enough to get a
15  good order to me, and the faster you do it, the faster it's
16  going to be up and we can then move on from here and address
17  the issue of the attachment itself, regardless of the amount.
18            That's all I have to say.  I'm hanging up now.  I'm
19  sure I'll be speaking to you.  Thank you.
20                              * * *