

DGW KRAMER LLP
One Rockefeller Plaza
Suite 1060
New York, NY 10020
www.dgwllp.com

Jacob Chen, Esq.
Katherine B. Kramer, Esq.
RongPing Wu, Esq.
jchen@dgwllp.com
kkramer@dgwllp.com
lwu@dgwllp.com
Tel:  (+1) 917 633 6860
Fax:  (+1) 917 633 6183

February 8, 2021

**VIA ECF**

Hon. Naomi Reice Buchwald
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

> Re: Mattel Inc. v. The Entities Doing Business as Goodmenow at the URL Goodmenow.com et al
> 1:20-cv-11075-NRB
>
> Opposition to Plaintiff's Letter Motion for Expedited Discovery (Doc. 39)

Your Honor:

The following letter is made on behalf of Defendants ("Yokawa") in response to the Court's February 5, 2021 Order.  The Court requested a response to three topics, each of which is answered below.

1. **Hong Kong Recognition of Judgments Issued in the United States**

Judgments from the United States are routinely enforced and accorded full faith and credit in Hong Kong pursuant to Hong Kong's common law system that is very similar to that of the United States.

In *Nintendo of America Inc v Bung Enterprises Ltd* [2000] 2 HKC 629; [2000] HKCU 102, Nintendo obtained a default judgment against Bung Enterprises in the United States District Court in California for intellectual property infringement, and then brought an action in Hong Kong to enforce the judgment. The Hong Kong court enforced the judgment, rejecting the arguments raised by the defendant. According to the Hong Kong Court, a United States judgment

DGW KRAMER LLP

Page 2
February 8, 2021

may be enforced in Hong Kong according to the following principles:

> "It is trite law that a judgment of the courts in the United States for a monetary sum may be enforced by an action suing on the judgment at common law in Hong Kong. There are a few requirements for the action to succeed. First, the court granting the judgment must have the jurisdiction to adjudicate on the cause giving rise to the judgment. Secondly, the judgment must be final and conclusive according to the law of the court granting the judgment, and in this case, it is California of the United States. Thirdly, the judgment must not be impeachable according to the private international law here."

*Id*.

In *Caffall Brothers Forest Products Inc v Chie Ku-yin t/a Sin Lie International Enterprises* [1987] 1 HKLR 92; [1987] HKCU 139, a Hong Kong court enforced a judgment from an Oregon federal court. In *Starlight International Inc v Bruce and others* [2002] EWHC 374 (Ch), a Hong Kong court enforced a United States judgment issued in the United States District Court for the District of Kansas.

In *Motorola Solutions Credit Co LLC v Kemal Uzan & Ors* [2016] HKCU 1446, the Hong Kong Court enforced a judgment entered in the United States District Court for the Southern District of New York. A copy of that decision is enclosed herein with this letter.

Because United States judgments can be readily enforced in Hong Kong courts under that jurisdiction's common law, Plaintiff has not met its burden of establishing the need for an attachment.

2. **Account Restrictions**

With respect to the Court's request for information about account restrictions, Defendants have attached a letter dated February 8, 2021 from Kutak Rock LLP, counsel for PayPal, Inc.

The letter states categorically that all the accounts are "held by PayPal Hong Kong Limited."

According to the letter from Mr. Samson, PayPal Inc. has placed a limitation on access on Defendants' accounts held by PayPal Hong Kong Limited.

Plaintiff bears the burden of establishing its right to the harsh and drastic prejudgment remedy of an attachment. Plaintiff has the burden of establishing that the attachable *res* is located in the Court's jurisdiction, and Plaintiff has not – and cannot – do so. For this reason, Plaintiff's motion for an attachment must be denied.

DGW KRAMER LLP

Page 3
February 8, 2021

    3. **Sales and Inventory**

Yokawa has reviewed its records to ascertain the specific number of "Day of the Dead" dolls sold through its websites. Enclosed is the declaration of Mr. Xin Cheng attesting to the information contained herein accordingly.

From the three websites specifically named in this case – GoodMeNow.com, FeelItNice.com, and MeetGoodTimes.com – there were 1,455 total orders of the "Day of the Dead" dolls, for a total doll quantity of 2,026 dolls sold.   Some orders included more than one doll, so the number of dolls sold is higher than the number of orders.   These 2,026 dolls generated total revenue of $84,236.90.

For all websites operated by Yokawa, the sales numbers are slightly higher.   For all websites operated by Yokawa, there were 2,369 total orders of the "Day of the Dead" dolls, for a total quantity of 3,149 dolls sold.   These 3,149 dolls generated total revenue of $131,764.36.

Thus, the total revenue generated by Yokawa from sales of "Day of Dead" dolls is $131,764.36.   Defendants' prior estimate was over-inclusive, as it included other products and accessories. Defendants had informed the Court that its prior estimate was over-inclusive and intended to set a ceiling for the possible scope of this case, and Defendants have now been able to comb through their records to ascertain the numbers of only "Day of Dead" dolls sold.

Yokawa does not have any of the "Day of the Dead" dolls remaining in its possession. Yokawa destroyed the remaining dolls after it ceased selling the product in November 2020. Yokawa chose to stop selling the product and destroyed the remaining products before it was contacted by Mattel or any other company about this litigation.

    Yours Truly,
    DGW Kramer LLP

    /s/ Jacob Chen
    By:    Jacob Chen, Esq.
           Katherine Burghardt Kramer, Esq.
           RongPing Wu, Esq.
    One Rockefeller Plaza, 1060
    New York, NY 10020
    Telephone: 917-633-6860