HCA 2232/2013

# IN THE HIGH COURT OF THE
# HONG KONG SPECIAL ADMINISTRATIVE REGION
# COURT OF FIRST INSTANCE

ACTION NO 2232 OF 2013

_____

BETWEEN

| | | |
|---|---|---|
| MOTOROLA SOLUTIONS CREDIT COMPANY LLC (formerly known as MOTOROLA CREDIT CORPORATION) | | Plaintiff |

and

| | |
|---|---|
| KEMAL UZAN | 1st Defendant |
| CEM CENGIZ UZAN | 2nd Defendant |
| MURAT HAKAN UZAN | 3rd Defendant |
| AYSEGUL AKAY | 4th Defendant |
| MELAHAT UZAN | 5th Defendant |
| ANTONIO LUNA BETANCOURT | 6th Defendant |
| LIBANANCO HOLDINGS CO LIMITED | 7th Defendant |
| COLIN ALAN COOK | 8th Defendant |
| HPF PRIVATE INVESTMENT FUND COMPANY LIMITED | 9th Defendant |
| KWONG KA YIN PHYLLIS | 10th Defendant |
| AA CAPITAL INVESTMENTS LIMITED | 11th Defendant |
| HIJAZ INVESTMENTS HONG KONG LIMITED | 12th Defendant |

_____

Before: Deputy High Court Judge Saunders in Court

Date of Hearing: 3 June 2016

Date of Judgment: 3 June 2016

Date of Reasons for Judgment: 17 June 2016

# REASONS FOR JUDGMENT

*Introduction*

1.  On 3 June 2016, I made a declaration that Motorola is entitled to enforce a US judgment, and entered judgment against the 1st to 7th defendants in the sum of US$1,290,580,663.54. Further orders enabling the enforcement of that judgment were made. These are the reasons for that judgment.

2.  Mr Westbrook relied upon affidavits from Jules B Kroll and George Reid Calhoun V both of which exhibited numerous documents confirming the assertions in the affidavits. Both Mr Kroll and Mr Calhoun swore to the truth of those affidavits before me, Mr Kroll by video link from New York, and Mr Calhoun in court in person.

3.  I adopt the following description of the background of the circumstances from the judgment of Zervos J delivered on 11 March 2014:

> "3. (Motorola) is a company incorporated in the United States of America (US). The 1st to 5th defendants are all members of the Uzan family of Turkey. It is claimed by (Motorola) that the 6th and 7th defendants are close associates of the Uzan family and that the 8th to 12th defendants hold property or assets as nominees for the 1st to 7th defendants.
>
> 4. The Uzans are a wealthy family who have been heavily involved in litigation with (Motorola) and others over the last 10 years. They include the father (the 1st defendant), his two sons (the 2nd and 3rd defendants) and daughter (the 4th defendant).
>
> 5. In litigation in the US it was found that members of the

> Uzan family and others had perpetrated a large scale fraud on (Motorola) by misappropriating advanced payments in the sum of $1.7 billion made by it to the Turkish telecom company, Telsim, and as part of their scheme they also ensured that the security provided for the advance payments by way of a share pledge was devoid of any value.
>
> 6. On 29 January 2002, (Motorola) filed a complaint against a number of defendants, including the 1st to 6th defendants, in the US District Court for the Southern District of New York which included allegations of misappropriation and fraud. On 3 July 2003, the court gave judgment against the defendants, including the 1st to 6th defendants, ordering them to pay (Motorola) compensatory damages and interest of US$2,132,896,9055.66. This is referred to as the July 2003 judgment.
>
> 7. On 20 June 2006, the US District Court entered a judgment against members of the Uzan family for punitive damages in the sum of US$1 billion, in addition to the compensatory damages. This is referred to as the June 2006 judgment.
>
> 8. In another set of proceedings, the US District Court on 25 October 2010 entered judgment against the 7th defendant in the total sum of US$4,359,619,155.74 inclusive of interest having found that it was the alter ego of the 1st to 6th defendants. This is referred to as the October 2010 judgment.
>
> 9. The US judgments are final and conclusive, and not subject to further appeal."

4. Having heard the evidence, I was satisfied that the 8th to 12th defendants held property and assets as nominees for the 1st to 7th defendants, as alleged by Motorola.

*An action on a foreign judgment:*

5. At common law, a plaintiff can sue on a money judgment obtained outside Hong Kong on the basis of an implied contract to pay. The requirements to be established in order to succeed in action on a judgment obtained outside Hong Kong are set out in Hong Kong Civil Procedure, 2016, Vol. 2 at E3/0/5:

    (i)    The judgment is for a debt or a definite sum of money;

    (ii)    The proceedings in which the judgment was obtained were not opposed to natural justice;

    (iii)    The foreign judgment was not obtained by fraud;

    (iv)    The foreign judgment was rendered by a court of competent jurisdiction;

    (v)    The foreign judgment is final and conclusive;

    (vi)    The enforcement in recognition of the foreign judgment is not concrete public policy; and

    (vii)    The foreign proceedings were not brought in contravention of an agreement under which the dispute in question was to be settled otherwise than by proceedings in the courts of that country

6.    The evidence before me establishes that all of those criteria are met.

*The defences:*

7.    Numerous issues were raised in their defences by the defendants by way of defence to the proceedings. Despite the fact that the defendants elected not to appear at the trial I have considered each defence that has been raised on the pleadings, in the light of the evidence before me and Mr Westbrook's submissions.

*Defendants not nominees:*

8.  First, it was neither admitted nor denied in the defence that the 6th-12th defendants where nominees of the Uzan family. The evidence however clearly established that they were in fact nominees and, apart from bare denials by the defendants, no person has come forward to suggest or try to establish any positive case that the assets are in fact owned by anyone else. The defence is not established.

*Dismissal of RICO complaints:*

9.  Next, it was asserted that a complaint filed by Motorola in the USA under the Racketeer Influenced and Corrupt Organisations Act (RICO) had been dismissed in the USA. That is correct, but that dismissal has no impact upon the fact that Motorola proceeded with the balance of its claims in fraud and obtained the judgment now sought to be enforced in Hong Kong. The RICO proceedings were found to be premature and consequently dismissed without prejudice. The dismissal does not create a defence to these proceedings.

*No jurisdiction in USA over 7th defendant:*

10. Next it was argued that the US District Court had no basis to assume jurisdiction over the 7th defendant. Separate proceedings were commenced against that defendant to enforce the US judgment against that defendant. The 2nd defendant has formally admitted in his Defence that he is the beneficial owner of the 7th defendant. On 25 October 2010, with the 7th defendant electing not to appear in the proceedings, the US District Court entered judgment against the 7th defendant for the same

A
B
C
D
E
F
G
H
I
J
K
L
M
N
O
P
Q
R
S
T
U
V

amount as the July 2003 judgment, but now including a later additional award of US$1 billion in punitive damages.

11. In any event, there is no substance to the assertion that the US District Court had no jurisdiction over of the 7th defendant. Personal jurisdiction over alter egos is a well recognised concept under US law: see *S Tel New England Co v Global NAPs Inc* 624 F 3d 123, 138 (2d Cir 2010), where the court held that it was well established that the exercise of personal jurisdiction over an alter ego corporation does not offend due process; and *Impulse Mktg Grp Inc v Nat'l Small Bus Alliance Inc* 2007 WL 170813 at *9, when the court held that when a court finds that personal jurisdiction exists over an individual or corporation, personal jurisdiction exists also over the individual's or corporation's alter ego.

*Not a judgment on the merits:*

12. It was asserted in the defence that the judgment, the subject of the action, was not a judgment on the merits. There is no requirement in this respect. In any event, this is an argument which is applicable only to the enforcement of the UK judgment.

13. Here, Motorola does not seek to enforce the UK judgment, but brings an action on the US judgment. Consequently it is not necessary for me to consider the academic criticism of *Morgan Stanley & Co Intl Ltd v Pilots Lead Investments* [2002] 2 HKLRD 731, in which Deputy Judge J Poon, as he then was, had to deal with a Singapore order enforcing an English judgment, with the Singapore order then being sought to be enforced in Hong Kong.

14. I accept Mr Westbrook's submission that this defence simply falls away with Motorola confining itself to the US judgment.

*Motorola has no locus standi:*

15. Next it was asserted in the defence that by an assignment agreement made in September 2005, Motorola irrevocably sold and assigned to Bayinderbank AS a final award which represented the entire underlying cause of action for the US judgment. Consequently, it was contended that Motorola had no *locus standi* to enforce the US judgment.

16. The argument disregards the fact that the agreement referred to expressly preserved Motorola's rights to enforce the judgment against the Uzans in every jurisdiction except four "Restricted Territories", namely Turkey, Kazakhstan, North Cyprus and Poland. The evidence further establishes that this argument has been raised unsuccessfully before both the US District Court and the US Court of Appeals for the Second Circuit, and dismissed by both courts.

*Punitive damages unenforceable in Hong Kong:*

17. It was next argued that a foreign judgment for punitive damages could not be enforced by an action in Hong Kong. That is right, but in its Reply, Motorola has formally waived it rights (if any) to enforce in Hong Kong any part of the judgment sums which relate to punitive damages. The issue simply does not arise.

*Breaches of the rules of evidence or natural justice:*

18. This allegation was not the subject of any particulars, and I

- 8 -

accept Mr Westbrook's submission that on that basis alone it stands liable to be dismissed for vagueness.

19.	Mr Westbrook recognise that the defence as pleaded might be a reference to the (apparently strategic) decision taken by the Uzan defendants not to participate in the U.S. trial itself, despite appearing in those proceedings variously by five prominent US law firms, in at least 29 other related court hearings.   In fact the US District Court proceeded to hold a trial and produced a detailed judgment of its facts findings and conclusions.   Nothing in the proceedings suggests any way that rules of evidence were breached or that the US proceedings were in any way contrary to natural justice.

*Motorola put to strict proof of the judgment sum:*

20.	Mr Westbrook properly acknowledged that prior collections of approximately US$1.04 billion had been made.   The evidence of Mr Calhoun included an up-to-date account of the sum due, as at the date of the hearing on 3 June 2016.

21.	I am satisfied that proper credit has been given to private collections, and that there has been no double counting.   I am satisfied that the sum for which Mr Westbrook sought judgment is the correct amount now outstanding, and that the sum for which I have given judgment has been strictly proved.

*The UK judgment may not be enforced under the Foreign Judgments (Reciprocal Enforcement) Order, (FJREO):*

22.	That is correct, but the argument falls away completely, as

Motorola seeks judgment only based upon the US judgment, and brings the matter before the court as an action on a foreign judgment rather than seeking enforcement under FJREO.

*Nokia as a co-plaintiff:*

23.     It is right that Nokia was a co-plaintiff in part of the proceedings.   But the evidence satisfies me that Nokia was not a party to the full judgment obtained by Motorola, and it has no right to any benefits that might arise from Motorola's judgment.   The point is simply irrelevant.

*The limitation arguments:*

24.     The usual rule in respect of a domestic judgment is that an action shall not be brought on a judgment after the expiration of 12 years from the date on which the judgment became enforceable: see Limitation Ordnance Cap 347, s 4(4).   However, in an action to enforce a foreign judgment the limitation period is six years, as a foreign judgment is treated as an implied contract to pay the amount of the judgment: see Halsbury's Laws of Hong Kong (2nd Ed.) Vol. 37 §§245.038, 245.066 and 245.067; and *Shenzhen Tian He Jian Sang Teletype Holdings Co Ltd v HK Jian Sang Electronics (Group) Ltd* [2008] 4 HKLRD 314.

25.     Where there has been a deliberate concealment of relevant facts the commencement of a limitation period is postponed: see LO, s 26(1):

> "Subject to subsection (4), wherein the case of any action for which a period of limitations prescribed by this Ordinance,

either-

   (a) the action is based upon the fraud of the defendant;

   (b) any fact relevant to the plaintiff's right of action has been deliberately concealed from him by the defendant; or

   (c) the action is for relief from the consequences of a mistake,

the period of limitation shall not begin to run until the plaintiff has discovered the fraud, concealment or mistake (as the case may be) or could with reasonable diligence have discovered it."

Here it is submitted that there has been deliberate and fraudulent concealment of assets in Hong Kong, against which the U.S. judgment may be enforced. Consequently, Mr Westbrook says the limitation period does not begin to run until Motorola has discovered the concealment, or could with reasonable diligence have discovered it. In this case Motorola relies upon the deliberate concealment of facts relevant to the right of action.

26. A fact relevant to a plaintiff's right of action is a fact without which the cause of action would be incomplete, but not a fact which would merely strengthen or otherwise complete a claim: see *Johnson v Chief Constable of Surrey*, The Times Law Reports 23 November 1992, which was confirmed by *AIC Ltd v ITS Testing Services Ltd (The Kriti Palm)* (2007) 1 Lloyd's Rep 555 at §§452-453.

27. Mr Westbrook's submission is that the critical fact relevant to Motorola's cause of action, the enforcement of a foreign judgment in Hong Kong, is the existence of assets within the jurisdiction which assets form the basis for a cause of action to seek enforcement of the foreign judgment. There is no authority for this proposition.

28. In *Sheldon v RHM Outhwaite (Underwriting Agencies) Ltd* [1996] 1 AC 102 HL. The House of Lords held that the words of s 32(1)(b) Limitation Act 1980, (identical to LO s 26(1)(b)), were wide enough to apply both where the concealment of relevant facts was contemporaneous with the accrual of the cause of action and where it occurred subsequently and there was no reason to restrict their generality to a contemporaneous concealment; and that, in accordance with section 1(2), the ordinary time limits had been excluded and time had not begun to run until the discovery or imputed discovery of the facts by the plaintiffs.

29. Thus, the fact that the creation of a Hong Kong companies as a device to conceal assets occurred subsequent to the U.S. judgment does not prevent the operation of s 26(1)(b) from delaying the commencement of the limitation period.

30. It is right that in *Lowsley v Forbes* [1999] 1 AC 329 at 343G, in the speech of Lloyd of Berwick, in dealing with the UK Limitation Act, the following passage, *obiter dicta*, appears:

> "The recovery of interest by way of execution on a judgment is not a 'right of action' within the meaning of s 32(1)(b). Even if it were, I doubt whether the defendant's concealment of himself or his assets would be the concealment of a fact relevant to such a right of action."

On the face of it, this passage may be argued to be a basis upon which the defendants can say that Motorola's action in Hong Kong is statute barred the limitation.

31. It is not clear from *Lowsley* whether the defendant in that

case did anything deliberate to conceal his assets, but it is clear that the subsequent concealment in relation to limitation point did not arise.  I note also that although *Sheldon* was cited[1] in *Lowsley*, it does not appear to be have been taken into account on this point, as it is not referred to at the passage set out above.

32. It seems clear that the court was not dealing with a situation where a foreign judgment was being sought to be enforced in England by way of an action on the judgment, but rather enforcement steps on a local judgment given over 11 years earlier.

33. The decision, whilst persuasive, must be noted to be only *obiter*, and in any event not binding on the courts of Hong Kong.  I do not find this House of Lords statement to be a bar to the present action.

34. Mr Westbrook mounted an alternative argument, based upon a breach of duty.  In *Beaman v ARTS Ltd* [1949] 1 KB 550 the Court of Appeal held that where a defendant acted in breach of the duty, a right of action would not accrue until the discovery of the breach.  In that case the defendant had acted in breach of the duties of a bailee for reward and failed to notify the plaintiff of the steps they had taken.  Their failure to inform the plaintiff of what they had done was held to constitute a reckless concealment by fraud falling within the then English equivalent of s 26(1)(b), and consequently the action was not barred by limitation.

35. In the present case the defendants have been under a clear, continuing, legal duty to disclose their worldwide assets under Mareva

---

[1] It appears from the report of the argument that *Sheldon* was cited for the proposition that in construing a consolidating Act it is not necessary to go to the previous legislation unless the Act is not clear.

and Disclosure orders made in the High Court in England and later upheld by the Court of Appeal there. It is clear that the failure by defendants to disclose the whereabouts of assets and the subsequent concealment of those assets constitutes a breach of the duty on the defendants pursuant to those orders.

36. There is no dispute that the discovery by Motorola of assets belonging to the Uzan family, and held by the defendant nominees in Hong Kong, occurred well within a period of six years prior to the issue of the writ. It is equally clear that the concealment of those assets was part of a deliberate and long-standing practice on the part of the Uzans to frustrate courts and plaintiffs internationally.

37. I am satisfied that the failure by the defendants to disclose the whereabouts of their assets and their subsequent concealment of the assets in Hong Kong, being in breach of their duties under both the Mareva and Disclosure orders, constitutes the fraudulent concealment of facts relevant to Motorola's right of action in Hong Kong.

38. Quite simply, without assets owned by the defendants in Hong Kong there is no basis upon which Motorola could bring proceedings to enforce a foreign judgment in Hong Kong. A Hong Kong court should not permit an action based upon a foreign judgment could be brought in a vacuum. The only sensible reason for bringing an action based upon a foreign judgment in Hong Kong is to enforce that judgment. When there are no assets upon which enforcement might be undertaken there can be no basis to bring the action in Hong Kong.

39. I am accordingly satisfied that there is no basis for the

limitation defence.

*Interest:*

40.     Mr Westbrook accepts that interest can only be claimed up to 6 years prior to the issue of the writ.  On that basis, the sum due, calculated having due regard to collections that have been made subsequent to the original judgment, and interest running back six years from 3 June 2016, is the sum of US$1,290,580,663.54, the sum for which the judgment shall be entered.

41.     Mr Westbrook put before me a draft judgment for sealing, which I have duly approved.

(John Saunders)
Deputy High Court Judge

Mr Simon Westbrook SC, instructed by Norton Rose Fulbright Hong Kong for the plaintiff

The 1st to 9th, 11th and 12th defendants were not represented and did not appear

Mr Martin Wong, instructed by Phyllis K Y Kwong & Associates, on watching brief for the 10th defendant