UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------X
MATTEL INC.,

            Plaintiff,

      - against -

THE ENTITIES DBA GOODMENOW AT THE URL
GOODMENOW.COM, THE ENTITIES DBA
MEETGOODTIMES AT THE URL
MEETGOODTIMES.COM, THE ENTITIES DBA
FEELITNICE AT THE URL FEELITNICE.COM; THE
ENTITIES DBA THE PAYPAL MERCHANT YOKAWA
NETWORK LTD., JOHN DOE NOS. 1-5, AND ABC
ENTITY NOS. 1-5,

           Defendants.
--------------------------------X

**MEMORANDUM AND ORDER**

20 Civ. 11075 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    On December 30, 2020, plaintiff Mattel Inc. ("Mattel" or "plaintiff") commenced this trademark infringement, counterfeiting, and copyright infringement action against the operators of a number of websites that sell and depict "Day of the Dead" dolls ("Day of the Dead Dolls") bearing Mattel's "Barbie" trademark. Before the Court is plaintiff's motion for an order of attachment.

**I.   Facts[1]**

---

[1] For the purpose of this Memorandum & Order, the facts are drawn from the operative complaint, ECF No. 44, as well as Plaintiff's Memorandum of Law in Support of its Order to Show Cause, ECF No. 22; the Declaration of Michael Moore in Support of the Order to Show Cause and attachments thereto, ECF No. 23; the Declaration of Emily H. Jaquez in Support of the Order to Show Cause and attachments thereto, ECF No. 24; the Declaration of William Dunnegan in Support of the Order to Show Cause and attachments thereto, ECF No. 25; Defendants' Letter of January 14, 2021 and the Declaration of Xin Cheng attached

Mattel is a manufacturer of consumer products, including toys, games, and playthings.  Among its products is a doll that it advertises and distributes using the mark "Barbie."  The Barbie mark is registered on the Principal Register of the US Patent & Trademark Office as US Trademark Registration Nos. 689,055 and 3,287,023, which together cover Mattel's line of dolls, doll clothing, and doll accessories.  Mattel owns the Barbie registrations, which it has used in connection with the sale of dolls since as early as 1960.  The Day of the Dead Doll is included in the Barbie line of dolls.

Mattel uses photographs to market its dolls.  Central to this case are photographs titled "Barbie Dia De Muertos (Pink Dress)" and "Barbie Dia De Muertos 2019 (Black Dress)" (together, the "Barbie Photographs").  Mattel owns the Barbie Photographs, and on or about January 30, 2021, registered their copyrights with the US Copyright Office.

Yokawa Network Limited ("Yokawa") is a Hong Kong-based e-commerce company organized under the laws of Hong Kong, with its

---

thereto, ECF No. 29; Plaintiff's Letter of January 15, 2021 and attachments thereto, ECF No. 30; Defendants' Letter of January 18, 2021, ECF No. 31; the Declaration of Xin Cheng in Support of Defendants' Letter Motion for a Conference Regarding the TRO, ECF No. 32; Plaintiff's Letter of January 20, 2021 and attachments thereto, ECF No. 35; Defendants' Supplemental Reply Memorandum of Law in Support of their Letter Motion for Conference regarding a TRO, ECF No. 34; Defendants' Memorandum of Law in Opposition to an Order of Attachment and attachments thereto, ECF No. 38; Plaintiff's Memorandum of Law in Further Support of its Order to Show Cause, ECF No. 48; Defendants' Letter of February 8, 2021 and attachments thereto, ECF No. 53; and Plaintiff's Letter of February 8, 2021 and attachments thereto, ECF No. 54.

principal place of business in Hong Kong.  Yokawa has about 560 employees, all of which are based in Hong Kong or mainland China. Yokawa sells more than 100 products, and in the fourth quarter of 2020, generated more than $19 million in revenue.  Yokawa anticipates generating revenues of more than $27 million in the first quarter of 2021.  Defendants Goodmenow, MeetGoodTimes, and FeelItNice are various website platforms that sell Yokawa's products.

Between October 21, 2020 and November 3, 2020 (the "Period"), Yokawa sold Day of the Dead Dolls via its websites by publicly displaying the Barbie Photographs.  During the Period, through the websites named in this matter — Goodmenow, MeetGoodTimes, and FeelItNice — Yokawa fulfilled 1,455 purchase orders for Day of the Dead Dolls, for a total quantity of 2,026 Day of the Dead Dolls. Through all websites operated by Yokawa, including those that are not named in this case, Yokawa fulfilled 2,369 orders for Day of the Dead Dolls, for a total quantity of 3,149 Day of the Dead Dolls.  In total, the sale of 3,149 Day of the Dead Dolls generated revenues of $131,764.36.  Yokawa estimates that there was a 10% profit margin on the sale of each doll, which means that Yokawa's total gross profit on Day of the Dead Dolls during the Period was approximately $13,176.44.

According to defendants, Yokawa ceased selling Day of the Dead Dolls before receiving any contact from Mattel in connection

with the product, and subsequently destroyed the Day of the Dead Dolls remaining in its possession.

II.  **Procedural Posture**

Plaintiff filed this case on December 30, 2020, alleging counterfeiting, trademark infringement, and copyright infringement of the Barbie mark and Barbie sculpture.  ECF No. 1.  In its order to show cause, filed the same day, plaintiff sought (i) attachment of defendants' funds at PayPal Inc. and (ii) a temporary restraining order ("TRO") restraining defendants' PayPal funds pending a hearing on the motion for an order of attachment.  ECF No. 22 at 5.  Pursuant to Federal Rules of Civil Procedure 64 and 65, this Court granted an <u>ex parte</u> temporary restraining order of attachment, which did not place any limit on the size of the assets that plaintiff was authorized to restrain at PayPal.  ECF No. 19. The TRO also required that defendants show cause at a hearing to be held on January 11, 2021.  <u>Id.</u>  After plaintiff served the order on PayPal, PayPal Inc. froze eleven of Yokawa's accounts — which contained over $5 million as of January 13, 2021 — and which defendants maintain are held by PayPal Hong Kong Limited.

On January 11, 2021, plaintiff and defendants appeared telephonically at the show cause hearing.  Defendants expressed their intention to oppose the attachment and the TRO, and the following day, together with plaintiff, filed a proposed briefing schedule, which the Court approved.  ECF Nos. 27, 28.  In the

meantime, on January 14, 2021, defendants filed a letter asking the Court to modify the TRO to exclude from the attachment certain PayPal accounts. ECF No. 29. Plaintiff replied to defendants' letter the following day, opposing modification of the attachment, and defendants submitted a reply in further support of their position on January 18, 2021. ECF Nos. 30, 31. On January 19, 2021, the Court held a hearing on defendants' request to modify the attachment order. At the Court's direction, the parties filed additional letters and declarations in connection with defendants' modification request on January 20 and 21, 2021. ECF Nos. 32-35.[2] Defendants argued that the scope of the initial attachment inhibited its ability to conduct business, and exceeded by far any recovery that plaintiff could reasonably anticipate.

At a telephonic hearing on January 21, 2021, the Court directed the parties to jointly submit a proposed amended order of attachment. The amended order was to direct PayPal to attach $2.8 million of defendants' funds, which amount would be sufficient to cover damages if plaintiff was successful in each of its claims and obtained the maximum possible statutory damages plus attorney's fees. The Court entered the amended order on January 22, 2021. ECF No. 37.

---

[2] Plaintiff's submission, ECF No. 35, revealed that PayPal independently restricted defendants' accounts "based on its own independent analysis of the dispute (sic) activity and risk associated with the 11 accounts." ECF No. 35-10. PayPal has indicated that it does not know when PayPal will lift these restrictions. Id.

The parties briefed the instant motion between January 11 and February 8, 2021. ECF Nos. 22, 38, 48, 53, 54. In its submissions, Yokawa asks the Court to deny the attachment in its entirety both in its discretion and because the PayPal accounts at issue are in Hong Kong, outside of the Court's jurisdiction. In the alternative, Yokawa requests that the Court modify the attachment to reflect Mattel's lost profits — which Yokawa originally estimated to amount to no more than $78,000.[3] Yokawa also asks the Court to increase plaintiff's undertaking in order to reflect the potential damages caused by the attachment. Plaintiff maintains that the attachment should remain as is in light of plaintiff's potential damages, which plaintiff argues exceed $2 million.

On February 1, 2021, plaintiff also filed an amended complaint, ECF No. 44 — the operative complaint — which replaced its claims for copyright infringement with respect to the Barbie sculpture with claims for copyright infringement in connection with the Barbie Photographs. ECF No. 48 at 13; compare ECF No. 4 with ECF No. 44.

On February 4, 2021, following review of the parties' submissions, the Court filed a letter addressed to the parties

---

[3] This amount was based on the total number of defendants' doll sales during the Period. This amount was superseded by defendants' later submissions that described the precise number of Day of the Dead Dolls sold, which provided estimated profits of $13,176.44.

enumerating specific questions, the answers to which are germane to the resolution of the instant motion. ECF No. 52. Specifically, the Court questioned the basis for the Court's jurisdiction over PayPal in New York for purposes of finding an attachable <u>res</u>. The Court also sought information about procedures which Mattel could utilize to collect a judgment in Hong Kong, if needed; which PayPal entity attached defendants' funds and which PayPal entity placed additional restrictions on defendants' accounts; and the precise number of Day of the Dead Dolls that defendants sold and maintained in their inventory. Each party filed a response to the Court's letter on February 8, 2021. ECF Nos. 53-54.

## III.  **Discussion**

The Court addresses the parties' arguments as follows. First, the Court assesses whether Mattel satisfies the requirements for a prejudgment attachment under Federal Rule of Civil Procedure 64. Second, the Court determines whether it should, in its discretion, deny the attachment. Third, the Court discusses whether any PayPal account is subject to attachment. Fourth, the Court assesses whether plaintiff is entitled to equitable relief.

At the outset, in order to resolve the instant motion, the Court must determine whether it has personal jurisdiction over defendants. Defendants are domiciliaries of Hong Kong, and thus the Court does not have general jurisdiction over defendants.

However, because defendants sold over 270 dolls[4] in New York during the Period, the Court determines at this stage that a prima facie showing has been made, which enables the Court to exercise specific personal jurisdiction over defendants pursuant to New York's long-arm statute.  N.Y. C.P.L.R. § 302(a)(1).[5]  The long-arm statute is a "single act statute," such that proof of one transaction in New York may be sufficient to invoke jurisdiction, "so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted."  Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 170 (2d Cir. 2010) (citation omitted).  Because defendants have on multiple occasions shipped goods to New York that allegedly infringed Mattel's trademark, the shipments were purposeful and substantially related to plaintiff's claim of trademark infringement.  See id.  Thus, section 302(a)(1) is satisfied and the Court deems that it can exercise specific jurisdiction over defendants for purposes of resolving this motion.

### a. Requirements for an Order of Attachment

Federal Rule of Civil Procedure 64 provides that "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located,

---

[4]  This includes all dolls, not only Day of the Dead Dolls.  ECF No. 32 ¶ 7.

[5]  We note that defendants have reserved their right to challenge the Court's exercise of personal jurisdiction.

provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64.  In this case, the parties do not dispute that New York law applies.

In seeking the attachment here, plaintiff relies on N.Y. C.P.L.R. § 6201(1), which provides that an order of attachment may be granted where the plaintiff has demanded and would be entitled to a money judgment against one or more defendants, where "the defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state." Further, N.Y. C.P.L.R. section 6212 provides that on a motion for an attachment the plaintiff shall show that "[1] there is a cause of action, [2] that it is probable that the plaintiff will succeed on the merits, [3] that one or more grounds for attachment provided in section 6201 exist, and [4] that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff." N.Y. C.P.L.R. § 6212(a).

On a motion for an order of attachment, the burden of proof is on the moving party, and it is a high burden. Fratelli Italiani, LLC v. Mironova, No. 18 Civ. 7013, 2019 WL 3759160, at *7 (S.D.N.Y. Apr. 11, 2019). "To show a probability of success on the merits for purposes of an application for an order of attachment, the moving party must demonstrate that it is more likely than not that it will succeed on its claims." New York Dist. Council of Carpenters Pension Fund v. KW Constr., Inc., No. 07 Civ. 8008,

2008 WL 2115225, at *1 (S.D.N.Y. May 16, 2008). "While all legitimate inferences should be drawn in favor of the party seeking attachment, the moving party nevertheless must make an evidentiary showing of proof stronger than that required to establish a prima facie case in order to satisfy this requirement." Flame S.A. v. Primera Mar. (Hellas) Ltd., No. 09 Civ. 8138, 2010 WL 481075, at *4 (S.D.N.Y. Feb. 2, 2010) (internal quotation marks and citations omitted).

In this case, three of the requirements of N.Y. C.P.L.R. § 6212 are easily met. There is, of course, a cause of action here. As to the third requirement, plaintiff correctly asserts that section 6201(1) provides grounds for an attachment, because defendant Yokawa is a "nondomiciliary residing without the state." N.Y. C.P.L.R. § 6201(1). The fourth requirement also is satisfied because defendants do not assert any counterclaims at this point in the case.

In connection with the second requirement, defendants argue that an attachment is inappropriate because plaintiff's case will fail on the merits. Defendants do not refute that plaintiff owns the trademark for "Barbie." However, defendants argue that they used "Barbie" only as a generic term for "doll" on their websites, and therefore did not infringe Mattel's trademark. Plaintiff, of course, challenges the notion that "Barbie" is a generic term.

"To show a probability of success on the merits, the moving

party must demonstrate by affidavit that it is more likely than not that it will succeed on its claims." Flame, 2010 WL 481075, at *4 (citing New York Dist. Council, 2008 WL 2115225, at *1)). In order to prevail on a trademark infringement claim, a plaintiff must show that "(1) it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant used the mark, (3) in commerce, (4) in connection with the sale ... or advertising of goods or services (5) without the plaintiff's consent." Coach, Inc. v. Allen, No. 11 Civ. 3590, 2012 WL 2952890, at *7 (S.D.N.Y. July 19, 2012) (internal quotation marks and citation omitted). Additionally, the plaintiff "must show that the defendant's use of the mark is likely to cause confusion as to the affiliation, connection, or associate of defendant with plaintiff, or as to the origin, sponsorship, or approval of the defendant's goods, services, or commercial activities by plaintiff." Id. (quoting 15 U.S.C. § 1125(a)(1)(A)).

First, the fact that Mattel registered the trademarks for "Barbie" entitles "Mattel to a presumption that its registered trademark is inherently distinctive." Mattel, Inc. v. Adventure Apparel, No. 00 Civ. 4085, 2001 WL 1035140, at *3 (S.D.N.Y. Sept. 7, 2001) (internal quotation marks omitted). Moreover, it is undisputed that defendants used the mark in commerce and in connection with the sale of goods without plaintiff's consent. Further, consumer confusion is presumed in a counterfeiting case.

Coach, 2012 WL 2952890, at *7.   Here, defendants openly use the trademarked term "Barbie" on their websites.

Plaintiff also challenges defendants' argument that "Barbie" is generic.   First, plaintiff points to defendants' own marketing materials on their websites, where the term "Barbie" is used alongside the word "doll" — suggesting that "Barbie" was not actually used as a synonym of "doll."   ECF No. 48 at 7.   Defendants' argument is even less credible because they used the term "Barbie" to sell a nearly-if-not-perfectly identical version of a Mattel product, not merely a distinctive doll.   See id.

Because plaintiff has shown that it is likely to succeed on the merits of its trademark claims, the Court finds that plaintiff has satisfied each of the four requirements for issuance of a prejudgment attachment under N.Y. C.P.L.R. § 6212.[6]

### b. Discretion to Attach Funds

Notwithstanding that the Court can authorize a prejudgment attachment, defendants ask the Court to exercise its discretion to

---

[6] Because plaintiff filed its amended complaint contemporaneously with its reply in support of its order of attachment, defendants did not have occasion in the context of formal briefing to challenge the likelihood of plaintiff's success on its copyright claims regarding the Barbie Photographs.   Nevertheless, it appears that plaintiff is likely to be successful.   To prevail on a claim of copyright infringement, a plaintiff must establish "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."   Clonus Assocs. v. DreamWorks, LLC, 417 F. Supp. 2d 248, 251 (S.D.N.Y. 2005).   Plaintiff has satisfied the first prong because it provided a certificate of registration for the Barbie Photographs.   Plaintiff may use indirect evidence to satisfy the second prong, and here plaintiff has done so.   The photographs on defendants' websites appear substantially identical to the Barbie Photographs, and defendants would have had access to the Barbie Photographs via the internet.   See id.

deny the prejudgment attachment, in particular because plaintiff has not "demonstrate[d] an identifiable risk that the defendant will not be able to satisfy the judgment." ECF No. 38 at 15. The Court agrees, and therefore vacates the order of attachment.

Whether to grant a prejudgment attachment order is discretionary, and a Court may deny the order even when the statutory requisites are met. Flame, 2010 WL 481075, at *4. When a party is using an attachment "as a means of security rather than to obtain quasi in rem jurisdiction, courts should issue [the attachment] only upon a showing that drastic action is required for security purposes." Fratelli, 2019 WL 3759160, at *7 (citations and quotation marks omitted, alterations in original); see also Ames v. Clifford, 863 F. Supp. 175, 177 (S.D.N.Y. 1994) (citations omitted) ("New York courts have required an additional showing that something, whether it is a defendant's financial position or past and present conduct, poses a real risk to the enforceability of a future judgment"). "There must be more than a showing that attachment would, in essence, be helpful." Plaintiff Funding Holding, Inc. v. Carrera, No. 17 Civ. 257, 2017 WL 7411183, at *3 (E.D.N.Y. Feb. 6, 2017) (citing VisionChina Media Inc. v. Shareholder Representative Svrs., LLC, 967 N.Y.S.2d 338, 346-47 (N.Y. App. Div. 2013)).

On the basis of Capital Ventures Intern. v. Republic of Argentina, 443 F.3d 214, 222 (2d Cir. 2006), plaintiff argues that

the Court's discretion in connection with granting an attachment is limited where, as here, "a statutory ground for attachment exists and both need and likelihood of success are established." Specifically, plaintiff argues that the statutory ground for attachment exists, plaintiff is likely to succeed on the merits, and there is a "need" for the attachment because defendants do "not even attempt to identify any way in which Mattel could satisfy a judgment against defendants absent the attachment Mattel seeks." ECF No. 48 at 9.

Initially, the Court shared plaintiff's concern, which is why it asked defendants, via its letter of February 4, 2021, ECF No. 52, to explain whether there was a procedure by which plaintiff could enforce a judgment against defendants in Hong Kong. In its response, defendants explained that judgments from the United States are routinely enforced and accorded full faith and credit in Hong Kong. ECF No. 53 (citing, e.g., Nintendo of America Inc v Bung Enterprises Ltd [2000] 2 KHC 629; [2000] HKCU 102; Motorola Solutions Credit LLC v Kemal Uzan & Ors [2016] HKCU 1446). Plaintiff, for its part, did not provide any argument or evidence to the contrary. The Court is thus satisfied that there is no "need" for a prejudgment attachment, because Mattel could enforce a judgment in Hong Kong.

Additionally, perhaps to convince the Court that defendants' past conduct justifies a prejudgment attachment, plaintiff has

appended dozens of pages of comments on internet message boards about defendants' allegedly improper business practices.  ECF Nos. 30-2, 30-3.  That defendants' operations have been called into question on internet forums by unverified users certainly diminishes its reputation as an e-commerce platform.  But this is insufficient to demonstrate that defendants — who had over $5 million in their PayPal accounts in January 2021 and revenues of over $19 million during the fourth quarter of 2020[7] — will not satisfy a judgment rendered in this case.  See VisionChina Media, 967 N.Y.S.2d at 346 (there is "no evidence that the [defendants] lack sufficient assets if a judgment is rendered against them" or that they "will choose to hide or otherwise dispose of their assets").

Here, defendants have provided the Court with information in the form of sworn affidavits about their business — even offering sales information arising from websites that plaintiff failed to name in this lawsuit.  Defendants, moreover, appear to conduct considerable business in the United States and in New York specifically.  Ultimately, the "Court is not persuaded that there is a risk of [defendant] ceasing its United States operations or radically altering its payment processing system for worldwide sales in its  . . . business solely to avoid paying a judgment in

---

[7] Again, plaintiff does not challenge defendants' submissions in this regard.

this case." Klipsch Grp., Inc. v. Big Box Store Ltd., No. 12 Civ. 6283, 2012 WL 5265727, at *11 (S.D.N.Y. Oct. 24, 2012). Accordingly, in its discretion, the Court vacates the prejudgment attachment.

### c. Jurisdiction Over PayPal

Defendants argue in the alternative that this Court cannot attach their accounts because their PayPal accounts are located in Hong Kong — outside of this Court's jurisdiction. Plaintiff argues that the Court has jurisdiction over PayPal Inc., the entity in the United States. The issue of location is important because an attachment order requires a link between the res/garnishee and the forum. Having already vacated the attachment in its discretion, the Court need not fully assess this argument. Nonetheless, given the amount of ink spilled by the parties, the Court offers its preliminary thoughts on the positions advocated.

At this early stage in the proceedings, defendants have produced contractual documents showing that they opened their accounts with PayPal Hong Kong Limited, rather than PayPal Inc. ECF No. 53-2. Plaintiff served the initial order of attachment on PayPal Inc. in San Jose, California. ECF No. 19. PayPal Inc. subsequently froze defendants' accounts in compliance with this Court's order. ECF No. 53-2.

Plaintiff sets forth a series of arguments in its attempt to establish that the Court has personal jurisdiction over PayPal,

such that this Court can attach defendants' funds, which defendants maintain are located at PayPal Hong Kong.

First, plaintiff claimed that PayPal's compliance with the Court's order equated to PayPal's submission to the Court's personal jurisdiction.  Plaintiff — perhaps concerned that PayPal would rebuke it — later reversed course on this point.  ECF No. 54.  In any event, the Court does not see how compliance with a federal court order equates to consent to personal jurisdiction.

Second, plaintiff contends that arguable jurisdiction over defendants results in jurisdiction in New York over PayPal, whose role in the underlying transactions was simply as a payment service provider.  This leap is contraindicated both by plaintiff's request to serve PayPal in California and case authority.  See, e.g., Bragg Live Foods, Inc. v. Eco Action SDN BHD, No. 15 Civ. 8261, 2016 WL 7446915, at *3 (C.D. Cal. Apr. 29, 2016) ("PayPal is available for transactions from around the world.  If its use were sufficient for jurisdiction, California courts would have jurisdiction over every tort and contract claim involving PayPal — regardless of where the parties are located and the injuries occurred. That simply is not consistent with the requirements of due process").

Third, plaintiff relied — more than once — on the case Hotel 71 Mezz Lender LLC v. Falor, 14 N.Y.3d 303, 315, 926 N.E.2d 1202, 1210 (2010), for the proposition that "where a creditor seeks to attach a debt (an intangible form of property) solely for security

purposes (i.e., the debtor is subject to the court's personal jurisdiction), the situs of the debt is wherever the debtor is present."   In Hotel 71, the Court attached intangible debt for security purposes where the garnishee was also a defendant who had submitted to personal jurisdiction in New York, and when the garnishee was personally served with an order of attachment in New York.   Id.   The Court struggles to discern the relevance of this case, as it is distinguishable in virtually every respect.   Here, PayPal is not a defendant; the debt in question is tangible cash; PayPal was served in San Jose, California; and, most importantly, PayPal has not submitted to this Court's jurisdiction.   The Court accordingly declines to uphold the attachment on the basis of Hotel 71.

Fourth, plaintiff provides a laundry list of orders of attachment issued to PayPal in this District, but this list does not advance the argument on the merits.   In the majority of these cases, the defendants never actually appeared to contest the attachment.   More importantly, again, the fact that judges in this District issued orders of attachment to PayPal, which were complied with, in no way indicates that PayPal consented to jurisdiction in New York.   Plaintiff is quick to state that it knows of "no decision denying a motion for an order of attachment of funds held at PayPal because the Court lacked personal jurisdiction over PayPal as garnishee."   ECF No. 54 at 7.   More significantly, plaintiff fails

to cite any decision where PayPal's compliance with a federal court order equated to consent to personal jurisdiction over PayPal, let alone PayPal Hong Kong Limited.

For the reasons set forth above, it is not entirely clear that plaintiff has met the jurisdictional requirements to attach the funds at issue in this case.

### d. Asset Freeze Pursuant to a Preliminary Injunction

Even though we have determined to vacate the attachment, nonetheless we are mindful that the order to show cause also sought a temporary restraining order preventing the defendants from withdrawing funds from any of their accounts at PayPal.  This relief is presumably sought pursuant to Rule 65 of the Federal Rules of Civil Procedure.

Pursuant to Federal Rule of Civil Procedure 65, district courts have the authority to issue prejudgment asset freezes where "the plaintiff is pursuing a claim for final equitable relief, and the preliminary injunction is ancillary to the final relief." Gucci Am., Inc. v. Weixing Li, 768 F.3d 122, 131 (2d Cir. 2014) (internal citation omitted).  In the context of trademark and copyright cases, a preliminary injunction may restrain only those assets that would account for a disgorgement of defendants' profits.  Klipsch, 2012 WL 5265727, at *5.[8]  Once the Court has

---

[8] By contrast, injunctive relief is not available when plaintiff seeks restraint of assets pending a potential award of money damages because "the authority to freeze assets by a preliminary injunction must rest upon the

personal jurisdiction over a party, the Court "has authority to order [the party] to freeze property under [the party's] control, whether the property be within or without the United States." Balenciaga Am., Inc. v. Dollinger, No. 10 Civ. 2912, 2010 WL 3952850, at *8 (S.D.N.Y. Oct. 8, 2010) (internal quotation marks omitted) (citing United States v. First Nat. City Bank, 379 U.S. 378, 384, 85 S.Ct. 528, 13 L.Ed.2d 365 (1965)). The Court "need not have personal jurisdiction over nonparties to issue a preliminary injunction requiring a party before it to refrain from moving assets during the pendency of the proceedings." Gucci, 768 F.3d at 130. However, if a nonparty has notice of the injunction and does not comply, the nonparty "could become liable through Rule 65 if they assist . . . in violating the district court's orders." Id. (citing NML Capital, Ltd. v. Republic of Argentina, 727 F.3d 230, 243 (2d Cir. 2013)).

Here, because plaintiff seeks "the equitable remedy of an accounting of profits . . . the district court ha[s] the inherent equitable authority to issue" an asset freeze injunction. Gucci, 768 F.3d at 130; see also ECF No. 44 at 12. Accordingly, the Court preliminarily enjoins defendants from withdrawing from

---

authority to give a form of final relief to which the asset freeze is an appropriate provisional remedy." Klipsch, 2012 WL 5265727, at *8 (citing Reebok Int'l, Ltd. v. Marnatech Enters., Inc., 970 F.2d 552, 560 (9th Cir.1992)); see also Grupo Mexicano De Desarrollo v. All. Bond Fund, Inc., 527 U.S. 308, 333 (1999) ("Because such a remedy was historically unavailable from a court of equity, we hold that the District Court had no authority to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of respondents' . . . claim for money damages").

PayPal funds that would deplete defendants' total account balance to less than $13,176.44, which amount is based on the assumption that defendants obtained 10% profits from $131,764.36 in revenues attributable to the Day of the Dead Dolls.

## IV.   Conclusion

The amended order of attachment, ECF No. 37, is hereby vacated.  Defendants are preliminarily enjoined from withdrawing from PayPal funds that would deplete defendants' total account balance to less than $13,176.44.

**SO ORDERED.**

DATED:   New York, New York
         February 13, 2021

         _____
         NAOMI REICE BUCHWALD
         UNITED STATES DISTRICT JUDGE